## GRAHAM *v.* STATE *use* MONROE COUNTY.

### Opinion delivered November 6, 1911.

1.  COUNTY TREASURER—LIABILITY UPON BOND.—Before suit can be brought upon the bond of a county treasurer, there must be a settlement made with him by the county court and the amount due by him determined, and such adjudication is conclusive upon his bondsmen as to the amount of his liability. (Page 580.)

2.  SAME—EFFECT OF ADJUDICATION BY COUNTY COURT.—An adjudication by the county court as to the liability of a county treasurer at a time when his first term of office had expired was incompetent to prove any liability against the sureties upon the first bond. (Page 580.)

3.  SAME—CORRECTION OF SETTLEMENT—EFFECT.—While the county court had power within two years to correct an alleged error in a settlement made with the county treasurer, under Kirby's Digest, sec. 7174, a correction made within such time will not validate proceedings against the sureties upon his bond had before such correction was made. (Page 581.)

Appeal from Monroe Circuit Court; *Eugene Lankford,* Judge; reversed.

## STATEMENT BY THE COURT.

Two suits were brought by the prosecuting attorney in the name of the State of Arkansas, for the use and benefit of Monroe County, one against W. L. Graham, treasurer of said county, and the sureties on his bond, naming them, for the term commencing October 31, 1906, and ending October 31, 1908, and the other against said Graham, treasurer of said county, and the sureties on his bond, naming them, for the term commencing October 31, 1908, and ending October 31, 1910.

On December 7, 1910, an amended complaint was filed in the same cause, in which all of the defendants named in the first complaint were joined. In this complaint it was alleged that W. L. Graham was duly elected treasurer of Monroe County, on September 3, 1906, and duly inducted into office, having made his official bond in the sum of $90,000, as required by law, for the faithful accounting of such moneys as·should come into his hands, as treasurer, with certain of the defendants, naming them, as sureties upon said bond. That said bond was duly approved, and a copy was filed as an exhibit to the complaint.

The second paragraph of the complaint alleges that at the general election in September, 1908, said Graham was again elected to the office of county treasurer of Monroe County, and as such treasurer executed a bond to the State of Arkansas, for the use and benefit of the county of Monroe in the sum of $90,000, conditioned as required by law for the faithful performance of the duties of his office and accounting for the public funds that should come into his hands as treasurer, with the other defendants, naming them, as sureties thereon; that the bond was duly approved by the circuit judge; that on the .................................day of................................................., 1910, said Graham resigned the office of treasurer of Monroe County, and Parker C. Ewan was duly appointed to fill the office, caused by the resignation, and continued to serve as county treasurer until the 31st day of October, 1910; that at the time said Graham resigned his office there were due certain amounts, setting them out, specifically, to the different school districts of the county from him as treasurer, and for which he and his bondsmen were liable, and which he failed to pay over to his

successor in office, making a total amount of $17,199.37, for which judgment was asked against said Graham and all of the sureties upon both his official bonds, with interest at six per cent. and penalties provided by law, and further "that no part of the above amount set forth had been paid by the said W. L. Graham, treasurer aforesaid, and that the same is now past due and unpaid, and there has been made an order of the county court directing him to make said payment, and with said order he has failed to comply, and by reason of said failure to pay over said sum the condition of his official bond has been broken, and the said W. L. Graham and his official bondsmen are liable for said amount, together with interest and penalties and costs of this action."

It was further alleged that at the time of his resignation he was due to the different funds of the county certain sums, naming them, in all $2,607.03, for which judgment was prayed with interest and penalty. Judgment was prayed for all purposes in the sum of $19,806.40, with interest from December, 1909, and penalties fixed by law. Certified copies of each of the official bonds, as examined and approved, were filed as exhibits to the complaint.

The sureties on the first bond filed a demurrer to the amended complaint, alleging:

"That they are sureties on the bond of W. L. Graham, as treasurer of Monroe County, which was executed on the ............... day of November, 1906, the term of office of such treasurer having expired on the 31st day of October, 1908, and these defendants say that said complaint, substituted complaints and all amendments thereto, do not state facts sufficient to constitute a cause of action against these defendants or any of them."

This demurrer was overruled, and the defendants excepted.

On January 2, 1911, appellants, the sureties on the first bond, filed their separate answer to the amended and substituted complaint, admitting that they were sureties on the official bond of W. L. Graham, as treasurer, for the term commencing on the 31st day of October, 1906, and ending on the 31st day of October, 1908, and denied that the said Graham was short in his accounts during the said term; that he was indebted to

plaintiff in any sum by reason of any default during said term, and that they are liable to the plaintiff, by reason of the default of the said Graham during said term or any other term. They further denied "that there has been any order of the county court of Monroe County directing the said W. L. Graham to pay into the treasury of Monroe County, or to the plaintiff herein, any sum by reason of any default occurring during the term of the said W. L. Graham as treasurer for which these defendants were sureties, and deny that the said W. L. Graham has failed to pay over any sum ordered to be paid by the county court aforesaid by reason of default occurring during the term for which these defendants are sureties."

Denied specifically any liability as alleged in the complaint to any and all of the school districts, and for any and all of the county funds as alleged and any indebtedness at all, and asked to be discharged with costs.

The testimony shows that W. L. Graham was elected treasurer of said county for the term from October 31, 1906, to the 31st of October, 1908, that he was elected his own successor, and that his official bonds for the first and second term were both duly approved. The county court record was introduced showing the settlement made with the county treasurer in 1910, as follows:

"In the Monroe County Court, fourth day of April term, June 6, 1910, Monroe County.

"Whereas, the said W. L. Graham, as county treasurer, did on the 21st day of December, 1909, file in the office of the county clerk of Monroe County, his settlement as county treasurer, and, the same having been presented to the county court for approval, and, said settlement coming on for examination and approval, upon examination of the same the court finds that said W. L. Graham, late county treasurer, is indebted to the county of Monroe in the sum of $14,808.93, and the said W. L. Graham having, after filing said settlement, resigned the office of county treasurer, and Parker C. Ewan having been appointed county treasurer of Monroe County and [being] comsioned and acting as such, it is therefore ordered that the said W. L. Graham, late county treasurer of Monroe County, pay over the funds or money in his hands so found due by him to the county of Monroe to the said Parker C. Ewan, county

treasurer of Monroe County, towit:   the sum of $14,808.93, taking the receipt of the said Parker C. Ewan, county treasurer aforesaid, which receipt or duplicate thereof he is directed to file with this court on or before the first Monday in July, 1910."

The county clerk testified further that an order of the county court was made, on January 2, 1911, correcting said settlement, which was read and is as follows:

"In the matter of the settlement of W. L. Graham,. late treasurer of Monroe County, Arkansas.

"Whereas, at the April term of the Monroe County Court, and on the 6th day of June, 1910, thereof, this court found that the above-named W. L. Graham, as county treasurer, was indebted to Monroe County in the sum of $14,808.93, the court upon further consideration of this matter, after examination of the report of expert accountants and the records of this court, finds that on the 31st day of October, 1908, the said W. L. Graham  was  indebted to Monroe County  in the sum of $10,497.76, for which the said W. L. Graham, as county treasurer, and the sureties on his first bond are liable, and which either the said W. L. Graham or his said sureties have failed to pay, and the said W. L. Graham is hereby directed to pay said sum towit:   The sum of $10,497.76, to the present treasurer of Monroe County and take duplicate receipts therefor."

The sureties on the first bond objected to the introduction of this order, but the court overruled their objections, and they saved their exceptions.

It appeared further that W. L. Graham resigned as county treasurer, and was succeeded by P. C. Ewan, on April 11, 1910, who continued as treasurer until October 31, 1910.   That no sums belonging to Monroe County or the various different school districts had been paid by him as such treasurer after the making of the order of the county court on June 6, 1910, and that W. L. Hinton succeeded Parker C. Ewan as county treasurer of Monroe County on October 31, 1910, and is the present county treasurer, and that no part of the funds due Monroe County by W. L. Graham, former treasurer, had been paid to W. L. Hinton.

Expert accountants all testified to an examination of the books of the treasurer, and that he was short in his accounts with the county on October 31, 1908, the end of his first term,

in the sum of $10,497.76. This testimony was admitted over the objections of the sureties on the first bond.

A great deal of testimony was introduced, which tended to show that a fraud had been practiced by the treasurer upon the county court at the time fixed by law, when the funds of the county were last counted by order of the county court during his first term, by borrowing certain amounts of money temporarily from different persons for the purpose of having it counted and making a showing that there was no shortage, the money being immediately returned after the counting to the lenders, and when there was, in fact, a shortage of said amount. After the testimony was introduced, the sureties on the second bond of W. L. Graham, moved the court to find the facts and declare the law as follows:

"That W. L. Graham, as treasurer of Monroe County was indebted to the county in the sum of $10,497.76, for which sum the sureties on the first bond are liable. And that the breach of the first bond was made during his first term as county treasurer, for said amount has not been paid by him, and that the sureties who signed the second bond are not liable for said sum."

The court found the facts and declared the law as stated, and to the ruling of court in so declaring the law and facts the sureties on the second bond who were not on the first bond objected at the time and saved their exceptions.

The court was further asked to find: "That W. L. Graham, as county treasurer, is liable and indebted to the county in the sum of $2,698.35 and that the same has not been paid by him, and that the breach of the bond for his second term occurred in said sum and amount, and that his second bond and the sureties thereon are liable for said sum."

It found the facts and declared the law as stated, and to its ruling in so finding the facts and declaring the law the sureties on the first bond who were not on the second bond at the time objected and saved their exceptions.

The sureties on the first bond also objected to the finding of the court that they were liable to the county for interest, as found by the court, and saved their exceptions.

The sureties on the first bond asked the court to declare the law to be that the judgment of the county court of Monroe

County, made June 6, 1910, finding W. L. Graham, treasurer, to be indebted to the county in the sum of $14,808.93, and directing him to pay said sum to his successor in office, is not binding on such of the defendants as were sureties on his official bond for the first term, and that they are not liable for any portion of said sum, and that said finding and judgment of the county court for said amount were conclusive as to the liability of said Graham and defendants, his sureties on his official bond for his second term, and "there is no liability against the sureties on the bond of a county treasurer, and no action can be maintained against said sureties, until there has been an order of the county court definitely fixing the liability of the county treasurer, for the term for which the defendants became sureties."

Each and all of these declarations of law were refused, and exceptions saved thereto.

Judgment was rendered against the sureties on the first bond, and against those upon the second official bond in accordance with the findings of facts and the law as declared by the court, and from this judgment appellants have appealed.

*S. H. Mann,* for appellant.

1. The complaint is bad because it fails to allege that the county court had made a finding of the amount due from the treasurer for money received by him during his first term. Such a finding is necessary before suit can be filed and maintained against the sureties. A complaint against the sureties should allege either that the treasurer had settled with the county court and failed to pay the amount found due, or had failed to settle and the court had adjusted the account and rendered judgment against him. Kirby's Digest, § § 1163 1164; 14 Ark. 170; 39 Ark. 172; 51 Ark. 205; 50 Ark. 105; 136 S. W. 947.

Where the principal has held office for preceding terms, the sureties in the official bond are to be proceeded against as though separate individuals had succeeded to the office. 42 Pac. 36; 72 Am. Dec. 204; 4 S. E. 721; 48 Ark. 426.

The effort of the county court at its January term, 1911, to apportion the shortage between the first and second terms could not be binding upon any one because (a) it was an effort

to correct a judgment rendered at a former term; (b) no notice was given to any of the parties, and (c) the order was made after the filing of this suit and on the day the cause was being tried. 74 Ark. 520; 64 Ark. 477.

In case of two successive terms, where there is a different bond for each term, the law presumes that the defalcation occurred during the second term, and that the sureties on the second bond are liable. 29 Cyc. 1458, 1459, 1469; 19 Ill. App. 24.

2. It was not proper to join the two sets of sureties in an action at law where it would be impossible to adjust the accounts and make settlement between the treasurer and the various funds he holds, and to apportion any liability that might be found between the sureties on the different bonds. 49 Ark. 311; 16 Ark. 480. No sufficient reason is shown why the sureties in the two bonds should be joined. The testimony shows that Graham had more than sufficient money on hand at the end of his first term to pay any alleged shortage of that term. Mechem on Public Officers, § 287; 42 Pac. (Cal.) 36; 72 Am. Dec. 204; 1 L. R. A. 118; 29 Cyc. 1459; 38 N. J. L. 586; 4 S. E. 721.

*Manning & Emerson,* for appellee.

1. The suits were separately brought, and on appellant's motion were consolidated, and the court's act in consolidating the actions is clearly authorized by the statute. Acts 1905, p. 798; 83 Ark. 288. There is nothing in appellant's objection to the court's refusal to require appellee to elect at the trial which set of bondsmen it would proceed against. 5 Ark. 208; 10 Ark. 428; 21 Ark. 329.

2. It is sufficient answer to appellant's contention that the demurrer should have been sustained because "the complaint fails to allege that the county court * * * had made a finding of the amount due from the treasurer, etc.," to say that the complaint does allege such finding.

If, in case of two successive terms and a different bond for each term, there is any presumption of law that the defalcation occurred during the second term and the sureties in the second bond only are liable, then such presumption is subject to rebuttal by satisfactory proof. 29 Cyc. 1469; 19 Ill. 24-27.

From the evidence the court found the amount of Graham's shortage which occurred during his first term, and on this issue of fact the court's finding is conclusive. The sureties on the first bond, as is conceded by appellant, are as clearly liable as if two distinct individuals had held the office for two succeeding terms. 29 Cyc. 1457, and authorities cited. See also 52 Ill. App. 179; 9 Am. Dig. 2244; 147 Ill. App. 67; 99 Ind. 218; 51 Ark. 206-11; 16 N. Y. 55-66; 14 Ky. Law Rep. 573; 35 La. Ann. 1200; 29 Mich. 24; 86 N. W. 461; 83 Mich. 479; 33 Ark. 276-80-81; 41 Pac. 531. If Graham had at the end of his first term made a report showing the amount of funds belonging to the county he had on hand, this report would not have been binding on appellee and the second bondsmen, but they would have been permitted to show that in fact he did not have the funds on hand and had misappropriated same during the first term. 66 Ind. 59; 81 Ind. 109; 97 N. Y. 300; 24 Wis. 518; 1 Am. Rep. 199.

In the absence of a stipulation in the bond of a public officer making it retrospective, there can be no liability on the bond for a default of the principal which occurred prior to the execution of the bond. 1 How. 104, 11 L. Ed. 64; 7 How. 681, 12 L. Ed. 870; 1 McLean (U. S.) 493; 77 Fed. 860; 9 Ala. 484; 117 Ala. 549; 23 So. 721; 199 Cal. 384, 42 Pac. 36; 21 D. C. 337; 76 Ill. 385; 96 Ill. 475; 16 Ia. 81; 39 Ia. 564; 78 Ky. 491; 105 Mass. 295; 125 Mass. 15; 91 Mo. 172; 4 Mont. 115; 38 N. J. L. 225; 31 N. C. 49; 74 N. C. 535; 95 Tenn. 317; 14 La. 1.

3. If appellants had thought the chancery court was the proper forum because the accounts were too complicated for adjustment and apportionment of liabilities to the respective bonds, they should have moved to transfer. Not having done so, they have waived that question, and can not raise it here for the first time. The testimony does not show that Graham had, "after the expiration of his first term, more than sufficient money in hand to pay any alleged shortage during his first term;" but, if it did, the liability of appellants would not be removed. 77 N. Y. 191; 48 Ark. 426.

KIRBY, J., (after stating the facts). There are many assignments of error in the motion for a new trial, but, under

our view of the law of the case, we shall only discuss such of
them as we consider necessary to its decision.

It was necessary to fix the liability of the sureties of the
treasurer that a settlement should be made with him by the
county court as the law requires and the amount due deter-
mined and ordered to be paid by it before suit could be brought
against his bondsmen for any defaul⁺, and the court erred in
not so declaring the law. Such judgment and order, when
made, is conclusive against the bondsmen as to their liability,
and is a condition precedent to the bringing of the suit against
them, no cause of action accruing until it was made. *Jones* v.
*State,* 14 Ark. 170; *Honeycutt* v. *Kirkpatrick,* 39 Ark. 172;
*State* v. *Wood,* 51 Ark. 205; *Wycough* v. *State,* 50 Ark. 105;
*Ireland* v. *State,* 99 Ark. 32.

There was a sufficient allegation in the amended com-
plaint of a settlement made by the county court with the
treasurer, and a failure upon his part to comply with it and pay
over the money as directed, and the demurrer was properly
overruled.

The first order of the county court introduced shows a
settlement duly made by the county court with the treasurer
in June, 1910, long after the expiration of his first term of office
and an adjudication of the amount due by said treasurer at
that time. The introduction of this order was properly objected
to by the sureties upon the first bond, since it tended in no
way to prove any liability for any breach of duty or failure to
account for funds by the said treasurer during his first term and
for the time which they became sureties, and the objection
should have been sustained. They also objected to the intro-
duction of the order and judgment of the county court of
January 2, 1911, purporting to be a correction of said order
of June, 1910, made after suit was bought, and their objection
should have been sustained. It, of course, had not been made
and no liability had been adjudicated against the treasurer for
which his first bondsmen could be held to answer before the
bringing of the suit, which, as has already been said, was a
condition precedent to a suit against them.

It is true that the county court had the power to correct
the alleged error in the settlement made with the treasurer
in June, 1910, at any time within two years thereafter, under

section 7174 of Kirby's Digest upon compliance with the provisions of that law, but even a strict compliance, if its last order was such, could not have had effect as an adjudication of the liability before suit brought. But for the introduction of these two orders and other testimony there could, of course, have been no recovery against the sureties upon the first bond. The county court having corrected its first order, and the plaintiff having recovered in the suit against the bondsmen upon the official bond for the treasurer's second term the smaller amount adjudicated against them in said order, and no appeal having been taken therefrom, the judgment is conclusive as to their liability.

Since the case must be remanded for another trial, we deem it necessary to say that the county court had the power at any time within two years after the settlement made with the treasurer to correct any error therein after the notice as required by statute; and if its said order was properly made, it would be binding and conclusive as an adjudication against said defaulting treasurer and the sureties upon the bond for his first official term.

If it shall develop that it was not so made, then the matter is still open, and the county court, there having been no settlement made with the said treasurer at the end of his first official term, still has the power to adjust his accounts upon proper notice and determine what amount, if any, was due by him at the expiration of said term, that should have been turned over to his successor and direct the payment thereof. The sureties upon his said bond, being bound for any default upon his part and failure to account during his first term, after an adjudication of it, will continue liable to answer for such default for the term of the statute of limitations upon bonds of the kind after such adjudication is made, the time the cause of action accrues against them.

For the errors indicated the case is reversed and remanded for a new trial.