STATE USE CRAWFORDSVILLE SPECIAL SCHOOL DISTRICT *v.*
HUXTABLE.

Opinion delivered November 19, 1928.

12

*Charles D. Frierson,* for appellant.

*S. V. Neely* and *Rose, Hemingway, Cantrell & Loughborough, W. B. Scott* and *A. B. Shafer,* for appellee.

HART, C. J., (after stating the facts). In the first place, it is contended by counsel for the Crittenden County Bank and the Bank of Crittenden County that there was no liability on their part. The Bank of Crittenden County was organized for the purpose of purchasing the assets and assuming the liabilities of the Crittenden County Bank, which had become insolvent. The contract for the purchase of the assets and the assumption of the liabilities of the Crittenden County Bank was made on February 5, 1927. It is sought to hold both of these banks liable upon the theory that the Crittenden County Bank had purchased the assets and assumed the liabilities of the Crittenden County Bank & Trust Company. Of course, if there was no liability on the part of the Crittenden County Bank, there could be none on the part of the Bank of Crittenden County.

Now, it is sought to hold the Crittenden County Bank liable under its contract to purchase the assets and assume the liabilities of the Crittenden County Bank & Trust Company, which was approved by the chancery

court on the 3d day of February, 1926. The Crittenden County Bank & Trust Company was organized as a trust company, and, under subdivision 7 of § 747 of Crawford & Moses' Digest, it had the power to sign the bond of Frank Huxtable as county treasurer of Crittenden County. It did sign his bond as one of his sureties, and, on that account, became liable for the faithful discharge of the duties of his office. On December 17, 1923, the Crittenden County Bank & Trust Company became insolvent, and its affairs were wound up by the State Bank Commissioner under the statute. At this time no liability had accrued against any one on Huxtable's bond. The liability of Frank B. Huxtable and his bondsmen for the $5,306.97, belonging to the Crawfordsville Special School District, did not accrue until nearly a year afterwards. This money was lost because of the failure of the Bank of Commerce of Earle, in which the money was deposited. Prior to the failure of the Bank of Commerce, the Crittenden County Bank was organized for the purpose of purchasing the assets of the Crittenden County Bank & Trust Company and assuming its liabilities. The contract of purchase and sale was approved by the chancery court on February 3, 1926; and it is contended by counsel for the appellants that the liability of Frank B. Huxtable and the sureties on his bond as county treasurer included the amount belonging to the Crawfordsville Special School District, which was lost by the failure of the Bank of Commerce.

We cannot agree with counsel in this contention. It is true that the Crittenden County Bank & Trust Company had the power to sign as surety the bond of Frank B. Huxtable as county treasurer of Crittenden County. Subdivision 7 of § 747, Crawford & Moses' Digest. This power, however, was taken away by the Legislature of 1923. Acts of 1923, p. 515. Section 10 of that act expressly repeals par. 7 of § 747 of the Digest. Besides, corporations organized to do a general banking business never had the power to sign the bond of a public officer as surety. At the time the affairs of the Crittenden County Bank & Trust Company were placed in the hands of the

Bank Commissioner, and sold by him under the order of the chancery court, neither a corporation organized to do business as a trust company nor that organized to do a general banking business had the power to sign the bond of a public officer as surety. Therefore it could not be said that, under the contract in question, the Crittenden County Bank should be held to have taken the place of the Crittenden County Bank & Trust Company as one of the sureties on the bond of Frank B. Huxtable. No liability had accrued on his bond at that time.

The Bank of Commerce did not fail until nearly a year afterwards. The money involved in this suit was lost by its failure. Hence there was no existing liability on the bond of Frank B. Huxtable at the time the Crittenden County Bank purchased the assets and assumed the liabilities of the Crittenden County Bank & Trust Company.

We are of the opinion that the terms of contract of purchase and sale of the assets of the Crittenden County Bank & Trust Company only included existing liabilities of the latter, and that no attempt was made to include a default on the bond of the treasurer which might accrue in the future.

But it is contended that the liability of the Crittenden County Bank & Trust Company, as surety on the bond of Frank B. Huxtable, was a continuing one, and that it continued throughout his term of office, although the Crittenden County Bank & Trust Company became insolvent, and its affairs were placed in the hands of the State Bank Commissioner, to be wound up by him pursuant to statute. We do not think so. When the affairs of the Crittenden County Bank & Trust Company were wound up and its assets disposed of and distributed pursuant to statute, its existence came to an end, and it could not in any sense be said to continue liable on the bond of the county treasurer. When its affairs had been wound up and its assets had been distributed among its creditors as provided by statute, it no longer had any powers whatever, and could in no sense be said to con-

tinue liable as one of the sureties on the bond of the county treasurer.

The police power of the State extends to the regulation of banking business, and even to its prohibition, except on such conditions as the State may prescribe. *Noble State Bank* v. *Haskell*, 219 U. S. 104, 31 S. Ct. 86, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487. The business of banking is of a public nature, and therefore is subject to statutory regulation for the protection of the public. The power to regulate the business necessarily carries with it the power to provide adequate machinery for winding up its affairs when insolvent. If it should be said that the liability of a trust company as a surety on the bond of a public officer must necessarily continue during the life of the bond, regardless of the insolvency of the bank and trust company, then a statute providing for the winding up of the affairs of insolvent banks and trust companies by a State Bank Commissioner or other public agency would be seriously impaired, and of but little advantage to the public or to those dealing with such bank or trust company. The power to wind up and settle its affairs must necessarily conclude its future liabilities and have the effect of putting an end to its existence for all purposes except those held open by the regulating statute itself.

We have already seen that, by the terms of the contract, the Crittenden County Bank only assumed the existing liabilities of the Crittenden County Bank & Trust Company. When the affairs of the Crittenden County Bank & Trust Company were wound up pursuant to statute, its liability as one of the sureties on the bond of the county treasurer ended. Therefore we are of the opinion that there is no liability on the part of the Crittenden County Bank or on the part of the Bank of Crittenden County, which purchased the assets and assumed the liabilities of the former.

The chancellor held that the individual sureties on the bond of the treasurer were not liable because the county court had given the treasurer credit for the amount lost by him on account of the failure of the Bank

of Commerce at Earle, in Crittenden County, and no appeal has been taken. It appears from the record that on June 30, 1925, a day of the April term, 1925, of the county court of Crittenden County, F. B. Huxtable, as treasurer of Crittenden County, filed his report as such county treasurer for the quarter ending December 31, 1924. Among other items for which he asked credit is the following: "Lost in Bank of Commerce, $5,306.97." The county court approved and confirmed his settlement, thereby giving him credit for the sum of $5,306.97, belonging to Crawfordsville Special School District, which had been lost by the failure of the said Bank of Commerce. No appeal was taken from the judgment of the county court in the premises. Hence it is claimed that the matter is *res judicata*, and that, inasmuch as the county court has never adjudged that any liability existed, the present suit cannot be maintained under the authority of *Graham* v. *State*, 100 Ark. 571, 140 S. W. 735. In that case the court held that, before a suit can be brought upon the bond of a county treasurer, there must be a settlement made with him by the county court, and the amount due by him determined, and an order made to pay over the amount found to be due. The court said that the judgment fixing the liability and containing an order to pay over was a condition precedent to the bringing of a suit against the treasurer and the sureties on his bond.

Now, under § 10,165 of Crawford & Moses' Digest, the county court was given the power on its own motion to reconsider and adjust the settlement of any county officer at any time within two years from the date of settlement. In *Sims* v. *Craig*, 171 Ark. 492, in construing this section of the statute, the court said that unintentional errors and mistakes in accounting, resulting in a loss to the county, would be a legal fraud upon the county, and might be corrected by the county court itself within the two years. The court also held that the chancery court has the power to surcharge and correct such settlement for fraud at any time within five years.

Was the action of the county court allowing the treasurer credit for the $5,306.97 belonging to Crawfordsville Special School District, lost by him on account of the failure of the Bank of Commerce of Earle in which it was deposited, a fraud? We think so. The general rule with respect to the liability of public officers and their sureties for the loss of public moneys is that, where the statute, in express terms, imposes the duty to pay over public funds received and held as such, and no condition limiting that obligation is in the statute, the obligation thus imposed upon and assumed by the officer is absolute, and the plea that the money has been lost without his fault does not constitute a defense to an action for its recovery. *United States* v. *Prescott,* 3 How. (U. S.) 578; *Smythe* v. *United States,* 188 U. S. 156, 23 S. W. 279; *Board of Education* v. *Jewell,* 41 Minn. 427, 46 N. W. 914, 20 A. S. R. 586; and 33 R. C. L., par. 136, p. 468.

In *Mecklenburg County* v. *Beales,* 111 Va. 691, 69 S. E. 1032, 36 L. R. A. (N. S.) 285, the Virginia Supreme Court of Appeals held that a county treasurer is liable for public funds lost through bank failure, although he believes the bank to be sound, and it is generally so regarded, and in depositing the funds he merely follows a long-prevailing custom, and acts with knowledge of the supervisors, where the statutes of the State manifest an intention to guard with the utmost care the public funds from loss, and to hold the county treasurer handling them to a very strict accountability for their safekeeping. Many decisions are cited in the opinion in support of the rule, and many more are cited in a case-note to 36 L. R. A. (N. S.) 285.

In *Cameron* v. *Hicks,* 65 W. Va. 484, 64 S. E. 832, 17 Ann. Cas. 926, the West Virginia Court of Appeals said:

"By the great weight of authority the custodian of public money is not a bailee bound only to the exercise of a high degree of care, prudence and diligence for its safety, and excusable for the loss thereof by fire, robbery, theft or bank failure, when such loss *is not in any* sense due to negligence or misconduct on his part, but a

debtor and insurer to the extent of the amount received, excusable for no losses except those resulting from acts of God or the public enemy.''

Numerous decisions from the Supreme Court of the United States and from the courts of last resort of the various states are cited in a case-note to 17 Ann. Cas. at p. 929, to the effect that the reasons on which the proposition rests are to be found in the unqualified terms of the bond and in considerations of public policy. Among the cases cited are the following: *State* v. *Croft,* 24 Ark. 550; *State* v. *Newton,* 33 Ark. 276; and *State* v. *Wood,* 51 Ark. 205, 10 S. W. 624.

In this State the condition of the treasurer's bond is that he will faithfully discharge the duties of his office, and under § 2832 of Crawford & Moses' Digest he and the sureties on his official bond are liable for all funds deposited by him in a bank when such bank, on demand, shall fail to pay to the person entitled to receive the same. Demand was made for the funds in the case at bar, and there was a failure to pay the same to the persons entitled to receive the same. Under the authorities above cited, the county court was wholly without power to allow the county treasurer credit for the funds in question, and the action of the county court in allowing the same constituted a legal fraud which a court of chancery had the authority to set aside in the present suit. *Fuller* v. *State use of Craighead County,* 112 Ark. 91, 164 S. W. 770; and *Sims* v. *Craig, supra,* and cases cited.

This principle was sustained in *State* v. *Croft,* 24 Ark. 550. In that case the court held that the declaration, in a suit upon a county treasurer's bond, averring that a specified sum, as appeared by the books, remained in the treasurer's hands; that he had been summoned by the county court to settle his accounts, but had failed to do so; that the court struck the balance due by him, and that he is justly indebted to the county as treasurer in such sum, which he had neglected and refused to pay, were sufficient to charge the sureties in the bond, without the averment of a formal judgment rendered by the county court.

In the case at bar, the county treasurer admitted that he was indebted to Crawfordsville Special School District in the sum of $5,306.97, which was due, and which he had lost by the failure of a bank in which he had deposited it. This substantially amounts to an averment that the county court had settled and determined the amount due from the treasurer to said school district as a part of its school fund, and that such adjustment and settlement are shown by the records of that court. In short, the settled rule is that public policy requires that every depository of public money should be held to strict accountability. The obligation to keep safely the public money is absolute, without any condition, express or implied. Nothing but the payment of it, when required, can discharge the bond, unless by statutory authority. *Newton County* v. *Green,* 104 Ark. 270, 1409 S. W. 73, Ann. Cas. 1914C, 491; *State* v. *Davis,* 178 Ark. 153, 10 S. W. (2d) 513; *Pearson* v. *State,* 56 Ark. 138, 19 S. W. 499, 35 A. S. R. 91.

Therefore, in view of the situation of the parties as shown by the record, the order of the county court procured by the treasurer giving him credit in his quarterly settlement is a legal fraud against which equity will relieve; and we hold that Crawfordsville Special School District was entitled to recover the sum sued for from the county treasurer and his individual bondsmen.

Relying upon the principles of *Graham* v. *State, supra,* it seems that the chancery court held that there was no liability on the part of the individuals in the present case because there was no order to pay over. The settlement filed by the county treasurer in the county court on December 31, 1924, was made pursuant to the statute requiring him to settle his accounts in the county court. The county court approved his accounts, and thereby found that the Crawfordsville Special School District was entitled to receive from him the sum of $5,-306.97, which he had deposited in the Bank of Commerce at Earle, and which had been lost by the failure of that bank. This constituted a finding and adjudication by the county court that the Crawfordsville Special School Dis-

trict was entitled to that amount of money. The county treasurer admitted that he had lost that sum of money belonging to the Crawfordsville Special School District by the failure of the Bank of Commerce. Therefore the Crawfordsville Special School District was entitled to recover that sum from the county treasurer and his bondsmen.

It is earnestly insisted, however, that the present suit could not be maintained until the county court made an order requiring him to pay over. No special order to pay over was necessary under the facts presented in the case at bar. As we have just seen, the county treasurer admitted that he had lost $5,306.97, belonging to the Crawfordsville Special School District, by the failure of the Bank of Commerce in which he had deposited the money. His admission that he had lost the money by the failure of the bank made it no longer necessary that there should be a formal order to pay over. The finding of the court that the money was due and that he no longer had it was equivalent to an order to pay over. If he had merely reported that he had that amount of money on hand belonging to the Crawfordsville Special School District, then, under the authority of the case above cited, it would have been necessary for the county court to have made an order for him to pay the money over to the Crawfordsville Special School District before a suit could be maintained against him and the sureties on his bond. It would have been a vain and useless thing for the county court to make an order requiring him to pay over the money when he had just admitted that he had lost it by the failure of the bank. His admission in this respect made useless a formal order to pay over. Therefore we think that the chancery court erred in dismissing the complaint of the plaintiffs as to the individual sureties on the bond of the county treasurer.

Finally, it is insisted that a court of chancery had no jurisdiction. We cannot agree with counsel in this contention. Courts of equity have always had the power to reform contracts. The plaintiffs elected to make the Crittenden County Bank and the Bank of Crittenden

County, or at least those in charge of the affairs of said banks, defendants in the action. Their answers ask for a reformation of the contract whereby they assumed the liabilities of the Crittenden County Bank & Trust Company after its insolvency. This gave the chancery court jurisdiction in the matter, and it is well settled that when a court of equity assumes jurisdiction of a case for one purpose, it will retain jurisdiction of it until the whole case is settled. Equity frowns upon a multiplicity of suits, and when it takes jurisdiction of a case for a matter cognizable in equity, it retains the cause to administer legal, after the equitable, relief. *Short* v. *Thompson,* 170 Ark. 931, 282 S. W. 14; *Gosnell Special School District No. 6* v. *Baggett,* 172 Ark. 681, 290 S. W. 577; and *Bowers* v. *Rightsell,* 173 Ark. 788, 294 S. W. 21.

The result of our views is that the chancery court erred in dismissing the complaint for want of equity, and for that error the decree will be reversed, and the cause remanded for further proceedings in accordance with the principles of equity and not inconsistent with this opinion.

SMITH, J., not participating.