Case 4.—ACTION BY MARIE E. WHITEHEAD AGAINST THE KANSAS MUTUAL LIFE INS. CO. and OTHERS ON A POLICY ON THE LIFE OF HER DECEASED HUSBAND.— May 17.

## Kansas Mutual Life Ins. Co. &c. v. Whitehead.

| 123 | 21 |
| 138 | 141 |
| f138 | 146 |
| 138 | 147 |

Appeal from Jefferson Circuit Court, Common Pleas Branch, 1st. Div.

Emmet Field, Judge.

Judgment for plaintiff. Defendant appeals. Reversed.

1. Life Insurance—Incontestable Stipulation—After two Years— Public Policy—A stipulation in a life insurance policy that "after two years from its date this policy will be incontestable, provided the premiums are duly paid, and the requirements of the company as to age, military or naval service, in

time of war are observed," embraces all defenses that can be made to its payment at the death of the insured except those specifically excluded by its language, and such a stipulation is not void as contravening public policy.

2.   Insolvent Company—Reinsurance—Policies in Good Standing— Schedule—Liability on Agreement—Where an insolvent insurance company by its receiver, turned over all its assets to another company upon an agreement with the latter company to reinsure all the policies in good standing therein, and actuaries were appointed to ascertain and report all the policies then in good standing, such policies only of the insolvent company as were included in the schedule reported by the actuaries "as in good standing" were embraced in the agreement for which the contracting company is liable.

DU RELLE & McHENRY for appellants.    LONG & PRICE of counsel.

1.    A man cannot contract against responsibility for his fraud. (Welch v. The Union Central Life Ins. Co., 108 Iowa 224, 50 L. R. A. 774; Bliss Ins. Sec., 274; Kerr on Insurance Sec. 142; Kansas Mutual v. McGrath; Ritter v. Mutual Life Ins. Co., 169 U. S. 139, 42 L. Ed. 698; Supreme Commandery v. Ainsworth, 71 Ala. 436, 46 Am. Rep. 332.)

2.    The period of limitation fixed by the law for relief against fraud cannot be shortened by contract.    (Lee v. Union Central L. I. Co., 22 R. 1712; Smith v. Herd, 22 R. 1603; Wright v. Gardner, 98 Ky. 454; New York Life Ins. Co. v. Weaver, 24 R. 1086; New York Life Ins. Co. v. Hord, 77 S. W. 381; New York Life Ins. Co. v. Hord, 78 S. W. 208; Ritter v. Mutual Life Ins. Co., 169 U. S. 139; Patterson v. Natural Premium M. L. I. Co., 42 L. R. A. 253; Sun life Ins. Co. v. Taylor, 22 R. 37; Clement v. Wright, 42 L. R. A. 247 (Tenn.); Wright v. Mutual Benefit Life Association, 118 N. Y. 237, 6 L. R. A. 731; Bates v. United L. I. Co., 68 Hun. 144, 142 N. Y. 677; Mass. Ben. L. Association v. Robinson (Ga.) 42 L. R. A. 261; Royal Circle v. Achterrath, in the Illinois Supreme Court, 58 Central Law Journal, 128; Welch v. Union Central L. I. Co., 50 L. R. A. 777.)

3.    The contract of this policy, fairly construed, excepts fraud from the incontestable clause.    Welch v. Union Central L. I. Co., 50 L. R. A. 777; Goodwin v. Provident Sav. Life Assur. Ass'n, 97 Iowa 233, 32 L. R. A. 473, 66 N. W. 157.)

4.    Cancellation may be sought in the lifetime of the insured. (Weaver Case, 24 Rep. 1086.)

5. By the agreement in this case, the rights of both parties were preserved, and the status maintained as it existed when the fraud was discovered.

6. In this case there was an actual cancellation in the lifetime of the insured. (Des Moines L. I. Co. v. Seifert, 71 N. E. (Ill.) 349.)

7. In this State relief is granted for fraud, if sought within five years after the discovery of the fraud, and such relief is not absolutely barred until ten years. That is the policy of this State, that a party who knows of the existence of a fraud shall not have longer than five years in which to seek relief, and also that he shall have that much time to present his case.

JOHN C. STROTHER, for appellee.

1. The statute of limitation applies to remedies and not to defenses. The answers of appellants present only matters of defense.

2. The clause in a policy of life insurance providing that it shall be incontestable after two years, provided the premiums are duly paid, is a valid provision, and a complete waiver of all defenses to a suit on the policy after two years from its date, including an attempted defense based on alleged false answers to questions in the application.

3. Especially is it such a waiver after the death of the insured, which occurred more than two years after the date of the policy, and where the policy is payable to an innocent third person and not to the estate of the insured.

AUTHORITIES CITED.

(A. & E. Ency. of Law, 19 Vol. 153; Grover's Executors v. Tingle, 21 R. 885; Avritt v. Russell, 22 R. 775; Sun Life Ins. Co. v. Taylor, 108 Ky. 408; Wilhoite v. Hambrick, 92 Ind. 594; Robinson v. Glass, 94 Ind. 211, Kentucky Statutes, Sec. 2515; Union Central Life Ins. Co. v. Spinks, 83 S. W. 615; Mass. Life Association v. Robinson, 104 Ga. 269, 270 and 271; Wright v. Mut. Benefit Life, 43 Hun. 65; Kline v. National Benefit Association, 111 Ind. 464; Ritter v. Mut. Life Ins. Co., 169 U. S. 693; Hopkins v. N. W. L. Asso. Company, 94 Fed. 730; Hart v. Modern Woodman, 60 Kansas, 63; Parker v. Des Moines L. Asso., 108 Iowa 133; Patterson v. Natural, &c. Ins. Co., 100 Wis., 1246; Christian v. Mut. L. Ins. Co., 142 Mo., 460; Revised Statutes of Ohio, Sec. 3626; Marreck v. Mut. Reserve Fund L. Asso., 62 Minn., 39; Simpson v. Life Ins. Co., 115 N. C., 393; Mutual Res. F. L. Asso. v. Payne (Texas), 82 S. W., 1063; Woods v. James, 87 Ky., 511; Cotton v. Brown, 9 R., 115; Fritscheler v. Koehler,

7 R., 34; Cavanaugh v. Britt, 90 Ky., 273; Brown v. Brown, 91 Ky., 639; N. Y. Life Ins. Co. v. Weaver, 24 R., 1086; Wright v. Mut. B. L. Asso. of America, 43 Hun., 61; Wood v. Dwarris, 11 Exch., 493; Clement v. New York Life Ins. Co., 42 L. R. A., 247; Mass. Life Asso., v. Robinson, 104 Ga., 256; Kline v. National Benefit Asso., 111 Ind., 462; Bates, &c. v. United Life Ins. Asso., 68 Hun., 144; Franklin Ins. Co. v. Villeneuve, 60 S. W., 1014; Marreck v. Mut. Res. F. L. Asso. (Minn.) 64 N. W. 68; Sun Life Ins. Co. v. Taylor, 108 Ky., 408; Joyce on Insurance, Sec. 1634.)

OPINION BY JUDGE BARKER—Reversing.

On February 10, 1898, the Kansas Mutual Life Insurance Company issued to Lurette M. Whitehead, a policy of insurance on his life for the sum of $2,000 payable at his death to his wife, Marie E. Whitehead, and which contained among others, the following stipulation: "After two years from its date this policy will be incontestable, provided the premiums are duly paid and the requirements of the company as to age, military or naval service, in time of war are observed." To obtain the policy, the insured made the usual representations as to his health, and, to the specific question as to whether he had consumption, answered, "No." On the 10th of November, 1900, the company undertook to cancel the policy for fraudulent representations on the part of the insured as to the state of his health, and notified him of this fact. An arrangement was then made by the parties preserving the legal status of each in the matter of tender and refusal of premiums as they thereafter fell due. On the 19th of June, 1903, the company being insolvent, was in the hands of receivers under order of the United States Circuit Court for the District of Kansas. Under a statute of Kansas authorizing it, the receivers effected a reinsurance of all policies in good standing on the books of the insolvent corporation, by a contract with the Illinois Life Insurance Company, which was approved by order of the court. On the 8th day of August,

1903, Lurette M. Whitehead died, and payment of the policy having been refused by the corporations, this action was instituted by the beneficiary, Marie E. Whitehead, against both. The Kansas Mutual Life Insurance Company pleaded the fraud of the insured in the obtention of the policy in bar of the action against it, and the Illinois Life Insurance Company set forth circumstantially the facts of the contract of re-insurance made by it and the receivers of the Kansas Mutual Life Insurance Company, and denied that the policy in question was in good standing on the books of the insolvent company, at the time of the contract of re-insurance, or that it was embraced in the terms of that agreement. The trial judge sustained general demurrers to both pleas; to the first, because two years had elapsed between the date of the policy and the attempt to forfeit it, and, therefore, the incontestable clause applied; and to the second, because the policy being legally in good standing at the date of the reinsurance contract, was embraced by its terms. The corporations declined to plead further, and a judgment was rendered in accordance with the prayer of the petition; of which they both complain. In regard to the incontestable clause, appellants insist: First, that it should be construed to exclude any defense based upon the personal fraud of the insured; and, second, if this be not so, that the provision is void as authorizing and promoting fraud, contrary to public policy. It seems to us that the terms of the clause clearly embrace all defenses, except those specifically excluded by its language, and these are: First, that the premiums are duly paid; and, second, that the requirements of the company as to age, military or naval service in time of war, are observed. The language is that "after two years from its date the policy will be incontestable, provided," etc. Webster defines "incontestable" to

mean, "Not contestable; not to be disputed; that which cannot be called in question or controverted; incontrovertible; indisputable." It must be conceded that if all defenses predicated upon the fraud of the insured are excluded there will be very little left upon which the incontestable clause can operate. In construing an insurance policy, as in construing any other contract, words are to be given their ordinary meaning and significance, except where they are terms of art; and applying this rule to the contract under discussion the word incontestable must, of necessity, include every defense which could otherwise be made to the policy, except those specifically excluded by the subsequent language. If this be not so, then the policy can only in a very limited sense be said to be incontestable. Is the clause void as contravening public policy? It is said that, as a rule, fraud vitiates every contract, and that a sound morality requires that the courts should forbid one's contracting for immunity from the consequences of his own fraud. All this may be admitted to be sound as an abstract proposition; but it does not hold good in the actual affairs of life, when rules must be adjusted to meet conditions, rather than theories. In the case at bar, full force and effect is given to the theory for a specified time—two years—and after that another public policy comes into play, which recognizes the right of the insured, under certain conditions, to contract for peace, and for a knowledge that after the stipulated time has expired, neither he, nor, if he be dead, those for whom he has undertaken to provide, shall be put to the expense and trouble of a trial of the question as to whether or not fraud was perpetrated in the procurement of the policy. This view does not exclude the consideration of fraud, but allows the parties to fix by stipulation the length of time which the fraud of the insured can operate to deceive the insurer. It recognizes the right of the

insurer, predicated upon a vast experience and profound knowledge in such matters, to agree that in a stipulated time, fixed by himself, he can unearth and drag to light any fraud committed by the insured, and protect himself from the consequences. This clause is of vast importance and benefit, both to the insured and to the insurer. It enables the latter to increase his business by givng an assurance to persons doubtful of the utility of insurance, that neither they nor their families, after the lapse of a given time, shall be harassed with lawsuits when the evidence of the original transaction shall have become dim, or difficult of obtention, or when, perhaps, the lips of him who best knew the facts are sealed by death. That this consideration is a powerful inducement, especially to the poor and obscure, to take out insurance, cannot be doubted; and after the lapse of this reasonable time, it must, of necessity, be of great consolation to the insured to feel that the insurance money, to secure which he has, perhaps, so often indured privation, will be paid over to his family undiminished by court costs or lawyers' fees. To permit an insurance company to induce persons to insure their lives under the pleasing expectation of an incontestable clause, and then, when the insured is dead, to undertake, as against his family, to contest the policy on the ground of fraud, would be to permit the perpetration of as great fraud as the insured could possibly have committed in the obtention of the policy. There is no more public policy against the fraud of the insured than against the fraud of the insurer. The incontestable clause is upheld in law, not for the purpose of upholding fraud, but for the purpose of shutting off harassing defenses based upon alleged fraud; and, in so doing, the law merely adopts the certificate of the insurer that within a given time he can expose and render innocuous any fraud in the preliminary statement of the insured.

There is no hardship in this to·the insurer, because
he fixes the time, and knows best his own ability to
accomplish what he undertakes. There is no actual
public policy which forbids so reasonable a contract.
It is not a stipulation in favor of fraud or a fraudu-
lent contract. On the contrary, it gives a long pe-
riod of time in which to find out, expose, and punish
it, and after the lapse of this stipulated time it gives
free play to a public policy in favor of the insured,
by which he secures immunity from harassing and ex-
pensive litigation. We are acquainted with no rule
which forbids one party from relying upon his own
acumen in protecting his interest in a proposed con-
tract, and refusing to rely upon the statements or
warranties of the opposing party. A fortiori he may,
after taking his own time in which to examine and
explore the subject of contract, say that he will waive
the effect or consequences of every thing detrimental
to his interest which his own industry and oppor-
tunity has failed to discover. This is not a case where
the insurer says to the insured: ''I require you to
make certain warranties, and although you may act
fraudulently in regard·to them, yet I will waive and
hold you harmless against the consequences of your
fraud.'' That, indeed, would be a vicious contract,
and clearly open to the criticism of being against
public policy as promotive of fraud. The in-
contestable clause under consideration, on the
contrary, is a reasonable stipulation ·operating in
favor of both the contracting parties. It gives to the
insurer ample time to investigate all of the warrant-
ies of the insured, and, after the lapse of this time,
it gives to the insured that quietude of heart which
comes from a knowledge that the fund which the
solicitude of love has provided for the objects of its
bounty, is placed beyond the pale of question. Not
only is this view consonant with reason, but it is
upheld by the great weight of authority. In the case

of Reagan v. Union Mutual Life Insurance Company,
76 N. E., 217, the Supreme Court of Massachusetts,
in speaking of a policy which was incontestable from
the beginning and allowed no time for the insurer
to investigate and render innocuous the fraud of the
insured, said: "This is not like the numerous cases
in which the policy provides that it shall be incon-
testable for fraud after the expiration of a specified
time, which is not unreasonably short. It has often·
been held that a provision of that kind is valid, be-
cause it is in the nature of a limitation of the time
within which the defendant may avoid the policy for
this cause.  Such a provision is reasonable and proper,
as it gives the insured a guaranty ₐagainst possible
expensive litigation  to  defeat his claim after the
lapse of many years, and at the same time gives the
company time and an opportunity for investigation
to ascertain whether the contract should remain in
force.   It is not against public policy as tending to
put fraud on a par with honesty."   In the case of
Wright v. Mutual Benefit Life Association of Amer-
ica, 23 N. E., 186, 6 L. R. A., 731, 16 Am. St. Rep.,
749, the New York Court of Appeals in upholding
an incontestable clause, similar to the one under con-
sideration, said: "It is not a stipulation absolute to
waive all defenses, and 'to condone fraud.' On the
contrary, it recognizes fraud and all other defenses,
but it provides ample time and, opportunity within
which they may be, but beyond which they may not
be, established.   It is in the nature of, and serves a
similar purpose, as statutes of limitations and re-
pose; the wisdom of which is apparent to all reason-
able minds."   In the case of Clements v. New York
Life Insurance Company, 46 S. W., 561, 42 L. R. A.,
247, 70 Am. St. Rep., 650. the Supreme Court of·Ten-
nessee, on the subject in hand, says: "Fraud is al-
ways required to be set up promptly when discovered,
or it may be treated as waived; and the effect of this

stipulation is that the insurer must exercise due diligence to discover such fraud within the year, and, if it fails to do so, it will treat it as waived, and no inquiry will be made or allowed into such matters." In the case of Murray v. State Mutual Life Assurance Company, 48 Atl. 800, 53 L. R. A., 742, the Supreme Court of Rhode Island thus discusses an incontestable clause similar to the one at bar: "That the company holds out the special provision in question, as an inducement to people to insure, and also that it is very effectual in accomplishing that object, no one can, for a moment, doubt. It clearly gives every one to understand that, no matter what mistakes may be made in the answers to the numerous questions propounded in the application, which answers are declared therein to be warranties, no advantage can be taken thereof by the company, after the expiration of the time limited in the agreement; that his rights under the policy, and the rights of those in whose favor it is drawn, will then become absolute; and that the beneficiary, after the death of the insured, and perhaps long after the death of all those who knew the facts relating to the transaction, will not be forced into a lawsuit to determine whether the policy ever had any legal force, or validity. The insertion of said clause in the policy of the company, is virtually saying to the insured, 'we will take two years in which to ascertain whether your representations are false or not, and whether you have been guilty of any fraud in obtaining the policy; and if, within that period, we cannot detect any such falsity or fraud, we will obligate ourselves to make no further inquiry, and to make no defense on account of them.' To hold the company bound by such an understanding is not to violate any rule of public policy, but is simply to compel it to fulfill its plain and deliberately assumed obligation." In the case of Sun Life Insurance Company v. Taylor, 108

Ky., 408, 22, Ky. L. R., 37; 56 S. W., 668, 94 Am. St.
Rep., 383, this court upheld an incontestable clause
where the defense was that the insured committed
suicide while sane.  There it was urged that it was con-
trary to public policy to enforce a stipulation against
the consequences of one's own crime; but we said
that after the expiration of the stipulated term (three
years) the policy was incontestable, and upheld the
stipulation.  To the same effect is the case of Royal
Circle v. Achterrath (Ill.) 68 N. E., 492, 63 L. R.
A., 452, 98 Am. St. Rep., 224.  We conclude that, as
it was within the province of the insured to say
whether or not the warranties of the insured should
be considered a part of the consideration of the con-
tract, it was also within its province to limit the oper-
ation of this consideration by stipulating for two
years during which it would rely upon the warranties
in question.

The second question which arises on this appeal is
the sufficiency of the third paragraph of the Illinois
Life Insurance Company's answer as a defense to
appellee's claim against it.  It is not contended that
the Illinois Life Insurance Company had any direct
contract with appellee or her husband; whatever
rights she had against it are acquired under the con-
tract by which this corporation took over the assets
of the Kansas Mutual Life Insurance Company and
reinsured all of the policies in good standing in that
corporation.  The paragraph referred to sets out that
the Kansas Mutual Life Insurance Company was in
the hands of receivers appointed by the Circuit Court
of the United States for the District of Kansas, and
that by a statute of Kansas it was provided that
when insurance companies of the class to which the
insolvent corporation belonged should be placed in
the hands of receivers or trustees appointed by the
court, such receivers or trustees might secure prop-
ositions, from solvent life insurance corporations au-

thorized to do business in the State to reinsure its poli-
cies and upon receiving such propositions trans-
mit the substance of them by mail to each of
the policy holders; whereupon the policy hold-
ers should, at a meeting called for the purpose, vote
upon the proposition of reinsuring, and if two-thirds
of the number of the holders of outstanding policies
should vote in favor of accepting any proposition for
reinsuring, a contract should be made in accordance
therewith, and the assets acquired under the terms
of such contract be thereupon turned over to the re-
insuring company; that the receivers appointed by
the federal court, under and by virtue of the statute
in question, requested the Illinois Life Insurance
Company to submit a proposition to them for the
reinsurance of the business of the Kansas Mutual
Life Insurance Company, which it did, and, on the
17th day of June, 1903, a meeting of the policy hold-
ers of the Kansas Mutual Life Insurance Company
was held, upon due notice, and in pursuance to the
order of court and the proposition of the Illinois
Life Insurance Company was adopted and approved
by a proper majority of the holders of outstand-
ing policies; thereupon an order was made by the
court directing the trustees to execute an agree-
ment embodying the terms of the proposition;
thereupon the agreement was made and entered into,
by which the Illinois Life Insurance Company agreed
to reinsure the policies, in good standing, of the Kan-
sas Mutual Life Insurance Company; that in order
to fix and carry out the contract of reinsurance, act-
uaries were appointed to ascertain and report all the
policies that were then in good standing in the Kan-
sas Mutual Life Insurance Company; that this report
was made, and the policy on the life of Lurette M.
Whitehead was not given as one of the policies in
good standing; that the report of the actuaries was
approved by the court in the following language:

"The court further finds that the schedule beginning on page 1 and concluding on page 132 of said actuaries' final report, is a full, true and correct statement of the number and description of each and every policy of the Kansas Mutual Life Insurance Company, in good standing, on June 30, 1903, together with the true legal reserve and reinsurance dividend and guarantee fund, legally and properly apportionable thereto. The court further finds that said schedule embraces all of the policies of the said Kansas Mutual Life Insurance Company upon which the said Illinois Life Insurance Company has assumed any liability under the terms of said reinsurance contract, approved by the said order of June 27, 1903." And further, that the Illinois Life Insurance Company made no other contract to insure any policy holders in the Kansas Mutual Life Insurance Company, except those included in the agreement set forth. We think the paragraph contains a valid defense against the claim of appellee. It is immaterial to this phase of the case that the Kansas Mutual Life Insurance Company wrongfully undertook to forfeit the policy on the life of Lurette M. Whitehead, as we have shown in the foregoing part of this opinion; the Illinois Life Insurance Company was not a party to this wrong, and had no knowledge of it. When the Kansas Mutual Life Insurance Company became insolvent and was placed in the hands of receivers, the court undertook to carry into effect a provision of the statutes of Kansas, by which all of the policies of the insolvent corporation in good standing could be reinsured by a solvent corporation, using the assets of the insolvent corporation to purchase reinsurance. In order to effectuate this purpose, and enable the solvent corporation, with whom it was proposing to contract, to know the extent of the liability it was assuming, actuaries were appointed and a schedule

of the policies in good standing was prepared and submitted as a basis of contract. With this schedule before it, the Illinois Life Insurance Company agreed to reinsure those policies which the schedule showed to be in good standing for a given proportion of the assets of the insolvent corporation; in other words, it agreed to reinsure a specific list of policies, of which the policy of appellee was not one. Contractual relations cannot be based upon mistake, misunderstanding, or inadvertence. The fundamental rule is that the minds of the contracting parties shall meet and agree on the same thing. If this agreement ad idem does not exist, there is no contract. It is manifest that the Illinois Life Insurance Company could not intelligently contract with the receivers of the Kansas Mutual Life Insurance Company to reinsure the policies in good standing, unless it knew what those policies were—the names of the parties, the amounts of the policies, etc. Without this as a prerequisite for entering into a contract, any engagement it might make with reference to the reinsuring would be mere hazard. It was possible that the Kansas Mutual Life Insurance Company had hundreds of policies in the same condition as that involved here, and in that case it is obvious that the extension of the contract of reinsurance by the construction claimed by appellee, would be ruinous to the reinsuring company. The question as to whether or not the federal court had jurisdiction to turn over to the Illinois Life Insurance Company, all of the assets of the Kansas Mutual Life Insurance Company and whether or not the former is responsible to the appellee for such part of the assets of the insolvent corporation as she would have been entitled to had they been distributed pro rata, is not before us, and we do not, therefore, pass upon them. She is suing on a contract alleged to have been made

for her benefit.  The answer of the Illinois Life Insurance Company, if true, shows there was no such contract, and this is, of course, a good answer to her claim.  This view is sustained in Brown, Administrator, v. Mutual Reserve Fund Life Insurance Company, decided in the superior court of Cook county, Ill., and reported in the National Corporation Reporter, October, 1904, and the case of Parvin v. Mutual Reserve Life Insurance Company (Iowa) 100 N. W. 39.  The trial court correctly sustained appellee's demurrer to the answer of the Kansas Mutual Life Insurance Company pleading the fraud of the insured in the obtension of the policy. It appearing that two years or more had elapsed; but it erred in sustaining the demurrer to the third paragraph of the answer of the Illinois Life Insurance Company, which, as we have shown, set forth a valid defense as to it.

The judgment is reversed as to the Illinois Life Insurance Company, and affirmed as to the Kansas Mutual Life Insurance Company.  The CHIEF JUSTICE and NUNN, J., dissent from so much of the opinion as reverses the judgment of the trial court as to the Illinois Life Insurance Company.