HOME LIFE INSURANCE CO. OF NEW YORK v. MASTERSON.

Opinion delivered October 21, 1929.

*Block & Kirsch* and *C. T. Bloodworth,* for appellant.

*F. G. Taylor* and *M. P. Huddleston,* for appellee; *Oliver & Oliver,* for interveners.

HART, C. J., (after stating the facts). The first question which we shall consider is whether or not the $9,000 policy was a wager contract. This court is committed to the rule that the issuance of a policy of life insurance to one who has no insurable interest in the life of the insured, but who pays the premium for the chance of collecting the policy, is invalid, as the contract is a wager, and against public policy. *McRae* v. *Warmack,* 98 Ark. 52, 135 S. W. 807, 33 L. R. A. N. S. 949. In that case it was also held that the assignment of a policy of insurance to one having no insurable interest in the life of the insured, although issued to one having such interest, is invalid if made in pursuance of an agreement made at the time of the issuance of the policy.

Again, in *Page* v. *Metropolitan Life Insurance Company,* 98 Ark. 340, 135 S. W. 911, it was held that the assignment of a life insurance policy to one not having an insurable interest in the life of the insured is not objectionable as being by way of cover for a wager policy, unless, at the time the policy was taken out, the insured intended to make such assignment.

This court has adhered steadily to this ruling, and it has been uniformly held that a wagering contract of insurance is contrary to public policy, and void. *Cotton* v. *Mutual Aid Union,* 132 Ark. 458, 201 S. W. 124; *Southern Mutual Life Ins. Co.* v. *Perry,* 144 Ark. 512, 222 S. W. 1067; *American Insurance Union* v. *Manes,* 150 Ark. 315, 234 S. W. 496, 18 A. L. R. 1161; and *Mutual Aid Union* v. *White,* 166 Ark. 467, 267 S. W. 137.

The assignment of a policy to a party not having an insurable interest is as objectionable as the taking out of a policy in his name, where this is done as a cover for

the true transaction. The intention of the parties determines the character of the transaction, which the courts will unhesitatingly declare in accordance with the facts, reading the policy and the assignment together, in connection with the attendant circumstances, as forming part of one transaction. *Cammack* v. *Lewis,* 15 Wall. (U. S.) 643; *Warnock* v. *Davis,* 104 U. S. 775; and *Steinback* v. *Diebenbrock, Executrix,* 158 N. Y. 24, 52 N. E. 662, 44 L. R. A. 27.

It is true that the $9,000 policy was applied for on the 26th day of November, 1924, and was not assigned to R. F. Masterson until June 27, 1925, but the attendant circumstances indicated that it was one transaction. While Dr. Blackwood denied that he was interested in the policy, the evidence shows that he paid the first premium, and that he and Masterson were intimate friends. Masterson lived in the country, and never went to town without visiting him. He had no business except that of farming, and took the assignment of the policy to himself for a debt of $99. This of itself tended to show that the transaction was a mere wager. Masterson admitted that he knew at the time that Hays had a yellow, jaundiced look, and was not in very good health. He knew that Hays was in poor financial condition, and said that he would not lend him much money without security. In detailing the circumstances of the transaction, he said that he met Hays accidentally, and that the latter had the policy with him, and that he acted on his own judgment in taking the assignment. He did not ask Hays whether he had paid the first premium or how he obtained the money to do so. At this time Hays owed him a small amount of money, and had been unable to pay him. Hays at the time looked like he was full of malaria, or had liver trouble. He had nothing to do with making up the proof of death of the insured. This was done by Dr. Blackwood. He did not know that Gilbert Hays had made him a beneficiary in his will until after his death.

Under these circumstances the policy is none the less a wagering contract because of the form of it. It

does not make any difference that the policy was payable to the estate of the insured, and that the assignment was made several months after the issuance of the policy, where the attendant circumstances show that it was the intent of the parties to evade the law, and that the assignment was by way of cover for a wager policy. The transaction was so out of the ordinary and so contrary to business experience that the circumstances attending the transaction point to the fact that it was the intention of the insured and Dr. Blackwood and Masterson to take out a policy payable to the estate of the insured, and afterwards to have it assigned to Masterson as a cover for a wager policy.

Another policy for $5,000 had already been assigned to Dr. Blackwood, and both of these policies had been issued to a man whom the undisputed evidence shows not to have been able to make a living for his family. He was conducting a small barber shop, and was assisted by his father and brothers in supporting his family, because he was not able to do so on account of his bad health. The undisputed evidence shows that he came out of the war with a jaundiced look, and had either malaria or a bad case of liver complaint. Dr. Blackwood himself admitted that he had advanced him considerable sums of money for living expenses, and had been his physician without pay. Therefore we are of the opinion that the chancellor was correct in holding that the $9,000 policy was a wagering contract, but that he erred in holding that there was not sufficient evidence to connect the plaintiff with the transaction.

It is next insisted that the policy became incontestable after one year from the date of its issuance. Reliance is placed by counsel upon the case of *Missouri State Life Ins. Co.* v. *Cranford,* 161 Ark. 602, 257 S. W. 66, 31 A. L. R. 93, where it was held that a life insurance policy containing a provision that it shall be incontestable after a stipulated time cannot be contested by the insurer on any ground not excepted in that provision.

We do not think that case, however, is applicable under the present facts. There the court was talking about provisions inserted in the policy for the benefit of the insurer, such as false representations and other matters of that sort, which the company might waive. The court said that the parties to a contract may provide for a shorter statute of limitations thereon than that fixed by law, and that such an agreement is in accord with the policy of statutes of that character. Wager insurance policies, however, are void on the ground of public policy. The rule of law which avoids such contracts is not in the interest of the insurer, but has its foundation in sound public policy. The insurer cannot by an agreement change the policy of the law. Since it is the law which, upon grounds of public policy, pronounces the policy to be void, the doctrine of estoppel has no application. *Anctil* v. *Manufacturer's Life Ins. Co.*, A. C. 604, affirming Can. S. C. 103.

This distinction has been recognized by the Court of Appeals of Kentucky. In the Cranford case we cited the case of *Kansas City Life Ins. Co.* v. *Whitehead*, 13 Ann. Cas. 301, where the Court of Appeals of Kentucky held that an incontestable clause is valid, and that such clause, in depriving the insurer of benefits based upon the fraud of the insured, is not void as against public policy. That case is also reported in 123 Ky. 21, 93 S. W. 609.

In the case of *Bromley* v. *Washington Life Ins. Co.*, 122 Ky. 402, 5 L. R. A. N. S. 747, 121 Am. St. Rep. 167, 12 Ann. Cas. 685, the court held that a policy of life insurance, void because contrary to public policy as a wagering contract, was not rendered actionable by an incontestable clause. The court said that, if this were allowed, then the law might be evaded in all such cases, and the aid of the court might be secured in enforcing a contract which was illegal and void because against the public policy of the State. The contract being one that was contrary to public policy, the defense that it

was void is allowed, not for the sake of the defendant, but for the law itself. As said by the Supreme Court of the United States, the principle in such cases is indispensable to the purity of the administration of the law.

The Kentucky court quoted with approval from *Hall* v. *Coppell,* 7 Wall. (U. S.) 599, the following: "The defense is not allowed for the sake of the defendant, but of the law itself. The principle is indispensable to the purity of its administration. It will not enforce what it has forbidden and denounced. The maxim, *Ex dolo malo non oritur actio,* is limited by no such qualification. The proposition to the contrary strikes us as hardly worthy of serious refutation. Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. No consent of the defendant can neutralize its effect. A stipulation in the most solemn form to waive the objection would be tainted with the vice of the original contract, and void for the same reasons. Wherever the contamination reaches it destroys. The principle to be extracted from all the cases is that the law will not lend its support to a claim founded upon its violation."

The result of our views is that the decree of the chancery court as to the $9,000 policy will be reversed, and the cause remanded, with directions to the chancery court to dismiss the complaint of the plaintiff Masterson on the $9,000 policy, and to dismiss the intervention of Annie Hays, administratrix, on the same policy for want of equity.

On the $5,000 policy suit by the First National Bank of Corning, but little need be said. The principles of law announced above apply equally to the suit of the bank in that case, and the intervention of the administratrix of the estate of Gilbert Hays, deceased, but the facts call for an application of the principles in a different way. According to the testimony of Dr. Blackwood, which was not disputed, and which was found by the chancery court to be true, he had advanced Gilbert Hays something over

$1,800 in medical services, and in money given to him for living expenses. This amount was not so disproportionate to the amount of the insurance policy as to indicate that it was a mere wager. There was an absolute assignment by the insured of this policy to Dr. Blackwood, but the chancellor held that, under the circumstances, the assignment was not an absolute one, but was intended as collateral security to insure him against the indebtedness owed him by the insured. We think this view of the matter is reasonable. The policy was made payable to the estate of the insured. Dr. Blackwood was his friend and medical adviser. He was bound to have known that the insured was in bad health, and that his financial condition was not such as to warrant him in making a gift to any one. The entire attendant circumstances indicated that it was only the intention of the insured to transfer the policy to enable Dr. Blackwood to be secured in the indebtedness which the insured owed him and for any further advances he might make him during his lifetime. No doubt both parties realized that the state of health of Gilbert Hays was such that he would not live many years, and this proved to be the case.

When all the attendant circumstances are considered together, we think the court properly held that the assignment to the bank was to be used by it to collect that part of the proceeds of the policy which was equal to the amount owed by Gilbert Hays to Dr. Blackwood at the time of his death. When we consider that Hays owed Dr. Blackwood for medical services for a period extending over several years, and for advances made at different times during the same period of time for living expenses, it is reasonably certain that the only object of Hays in executing the assignment of the policy was to invest Dr. Blackwood with entire control of it, to the end that the insurance company might deal directly with him in collecting the premiums, and that upon the death of the assured he might have full authority to collect the policy, and apply so much of the proceeds thereof as

might be necessary for the repayment of such sum or sums as he had advanced to Hays upon the security of the policy. Any other view of the matter would place Dr. Blackwood in the position of being pecuniarily interested in the death of Hays, and we will not presume that he had any desire to speculate upon the life of Hays or to do more than secure the repayment of what Hays might owe him at the time of his death. *Page* v. *Burnstine,* 102 U. S. 664.

We think, however, that the court erred in holding that the balance of the proceeds of the policy should be held by the bank as executor under the will of Gilbert Hays, deceased, for the reason that we find that the execution of the will was secured by the undue influence of Dr. Blackwood, and that the will was not a valid and binding one.

The court referred this branch of the case to the circuit court for this issue to be tried out there, but we are of the opinion that the chancery court erred in so doing. We have held uniformly that when chancery takes jurisdiction of a case for one purpose it will retain the case to administer the legal after the equitable relief. *McGaughey* v. *Brown,* 46 Ark. 25; *Hortsmann* v. *La-Fargue,* 140 Ark. 558, 215 S. W. 729; *Rose City Bottling Works* v. *Godchaux Sugars, Inc.,* 151 Ark. 269, 236 S. W. 825; *Tallman* v. *McGahhey,* 164 Ark. 205, 261 S. W. 306; and *Short* v. *Thompson,* 170 Ark. 931, 282 S. W. 14.

In the instant case all of the parties in interest agreed to transfer the cases to the chancery court, and thereby agreed that all the issues raised by the pleadings might be decided in that court. Some of the issues raised were equitable in their nature; and, in order to avoid a multiplicity of suits, and to do justice to every one, the court had a right to decide and should have decided all the issues raised by the pleadings. The question as to the legality of the will of Gilbert Hays was so interwoven with the other issues raised by the pleadings that it was almost indispensable to decide that question along

with the other issues. The will itself purports to give the $9,000 policy to R. F. Masterson and the $5,000 policy to the Bank of Corning. It was executed at a time when Hays was in extremely bad health, and when he had been so for several years. He was bound to have known that he would live but a few days, and this proved to be the fact. The whole will was made in the interest of third parties, and his wife and child were cut off with a mere nominal provision. This shows that the execution of the will was procured by the interested parties in aid of the prior transactions, one of which we find to have been intended as an evasion of the law against issuing wagering policies of insurance. Without recounting in detail the testimony, when the ill health of the insured for a period of six or eight years is considered, coupled with the fact that he was not during that time able to make a living for his wife and child, and when read in the light of the other circumstances, we think the chancellor should have held that the will was procured by the undue influence of Dr. Blackwood, and that it was null and void.

It follows that the decision of the chancery court in holding that the bank was entitled to recover the sum of $1,648.86 and the accrued interest on the $5,000 was correct, and should be affirmed. The balance of the proceeds of that policy, however, should have been adjudged to have belonged to Annie Hays, as administratrix of the estate of Gilbert Hays, deceased, and as guardian of their minor child. For the error in not so holding the decree in this respect must be reversed.

The court also erred in allowing the statutory penalty and attorney's fee on the $9,000 policy. The statutory penalty, and a reasonable attorney's fee should have been allowed in the suit on the $5,000 policy.

The result of our views is that the decree must be reversed, and the consolidated cases will be remanded with directions to render a decree in accordance with the views of this opinion, and not inconsistent with the principles of equity. It is so ordered.