FREER *v.* J. G. PUTMAN FUNERAL HOME, INC.

4-4895

Opinion delivered December 20, 1937.

308

*C. W. Knott,* for appellant.

*Ira D. Oglesby,* for appellee.

BAKER, J.   J. G. Putman Funeral Home, Inc., sued Dr. Freer upon a contract.  The pertinent provisions of said contract are as follows:

"(1)   To pay H. I. Aday $16.50.

"(2)   To pay the general taxes for the years 1931 and 1932 upon the above described property in the sum of $19.75.

"(3)   To satisfy in full the indebtedness of the party of the second part for medical services in the sum of $55.

"(4)   To pay the Guaranty Abstract & Title Company $15 for the extension of abstract covering the above described property.

"(5)   To render medical services, furnish medicines and to pay the party of the second part five and no/100 dollars per month until the total purchase price has been paid.

"It is agreed between the parties hereto that in the event of the death of the party of the second part prior to the payment of the indebtedness of four hundred dollars ($400) the balance due the party of the second part shall be paid on the funeral expense of the said party of the second part."

This contract was entered into on the 17th day of August, 1933.  Two days thereafter John F. Finney died.  Dr. Freer took charge of the property conveyed to him according to the terms of the contract and remained in possession for nearly three years before this suit was filed by the undertaking establishment to collect $175.75 with interest from the 19th of August, 1933, the date on which Finney died.

Dr. Freer offered as a defense to this suit his interpretation of the contract, that it was not made for the benefit of the plaintiff and that plaintiff could not maintain a suit thereon, but Freer's obligation was to the estate of John Finney, and whatever remedy the Putman Funeral Home might have was a claim against the said estate. The judgment of the circuit court determined otherwise. There is no dispute as to the facts, the disagreement arises out of a question of law.

The intentions of the parties, so far as these may be determined, may be examined to gain an understanding of the meaning of the parties by the language employed, and their conduct in relation thereto may help to clarify what might have otherwise been doubtful.

The appellant has fully performed the contract in all particulars, except the payment of the funeral expenses. It is urged that the courts have nothing to do with the other items mentioned in the contract as they are not involved in this litigation. However sound that contention may seem to be, those particular provisions are a part of the same written obligation, and the interpretation that the parties themselves placed upon the contract appears, at least, as a pertinent suggestion of their intentions.

In addition, it may be said that even if those provisions were ignored the surrounding facts and conditions under which the contract was entered into, together with the language used make fairly certain the actual intention of the parties and indicate a proper solution of the legal query presented.

Finney owned property he conveyed to Dr. Freer. The doctor was his physician and Finney already owed him a bill for professional services, amounting to about $55. It was in contemplation of the parties that Finney might need further medical assistance and medicines and some money during the remainder of his life. Assuming, as we do, that Dr. Freer was thoroughly competent and that he understood the afflictions with which Finney was suffering and appreciated perhaps to a greater extent than Finney did himself the possibilities

of the situation, the contract provided for the continued rendition of this medical service and medicines, and in addition to that, to pay to Finney $5 a month.

After the death of Finney this contract was delivered to the appellee by the sons of the deceased with the request upon appellee to provide the appropriate funeral. Appellee charged for its merchandise and services the amount in suit.

What was Dr. Freer's duty or obligation after this funeral? According to the language of the contract itself, "the balance due the party of the second part shall be paid on the funeral expense of the party of the second part." May it now be consistently urged that this language indicated that the parties meant this balance due should be paid to an administrator of the estate of Finney? We think not. That interpretation might destroy or frustrate the intention of the parties. It is true that the record shows that there was no other indebtedness, but there might have been other debts. If so, a payment to the administrator might have defeated, to a certain extent, a substantial payment upon the funeral expenses as the sum of money paid to an administrator might have been, under the law, distributed among creditors who could establish their claims by proper proof, as falling within the same classification. Pope's Digest, § 97. The language used by the parties could have but one meaning. Finney intended that this money should be used to pay the expenses of his funeral. Dr. Freer agreed that he would pay the money on such funeral expenses. The appellee was warranted in relying upon this obligation to pay.

Had it been the intention of the parties to pay, as Dr. Freer now contends, to Finney's estate, it would have been a simple matter, indeed, to have so said in the contract.

While it is true the contract does not mention the name of the appellee as a third party to be benefited as it did other third parties in the preceding four paragraphs of the contract, yet the contract was intended for

the benefit of a third party and not as a mere incident whereby some third party might be benefited.

In the case of *Carolus* v. *Arkansas L. & P. Co.*, 164 Ark. 507, 262 S. W. 330, we said: "Where, from the language of the contract itself or the testimony aliunde, it could be said that it was the intention of the parties to the contract to confer a direct benefit upon a third party, then such person may sue on the contract. It is not necessary that the person be named in the contract, if he is otherwise described or designated; he may be one of a class of persons, if the class is sufficiently described or designated."

It was, also, said in the case of *Dickinson* v. *McCoppin*, 121 Ark. 414, 181 S. W. 151: "the obligation of the promisee to the third person must be one that existed at the time of the making of the contract, or one which grew out of the contract itself." See, also, *Carson Pirie Scott & Co.* v. *Parrett*, 346 Ill. 252, 178 N. E. 498, 81 A. L. R. 1262.

Without stopping to consider or analyze further the above expressions or examine their relation to the controversy under consideration in the cases cited, we approve the effect of the above quotations.

There is no merit in the contention that Dr. Freer was not consulted by anyone when the appellee was selected as a funeral director. There was no service to be rendered to him, there was no condition under which it could be of more expense or more burdensome than if he had made the selection himself, independent of others who were more interested in that regard. It was not a proposition of choosing his creditor, or making a new obligation for him for the reason he had already created the obligation and signed an express contract and agreement to pay it, and had accepted property in consideration thereof.

We are confronted with the argument that formerly the courts held that there must have been some privity or obligation as between Finney and the appellee in order to bind appellant; that none being shown here the appellee is without remedy. We find that formerly under some

of the more ancient authorities that proposition might have been deemed as well considered. We prefer, however, to take a different view, which we think is more consonant with absolute justice, as well as in conformity with the contract. That view is supported by a substantial array of authorities to the effect that the more nearly absolute becomes the duty of the defendant to pay, in the same proportion is the power to sue increased. Here there is an absolute duty to pay. It admits of no denial and none is offered. There is the correspondingly increased right to sue.

"The weight of modern authority holds that one may maintain an action on a promise made to another for his benefit, if such promise is founded upon consideration. 3 Page on Contracts, § 1307. . . .

"And especially is this true where the one who makes the promise receives property and in consideration thereof agrees to discharge a debt in favor of another. 3 Page on Contracts, § 1314." *Spear Mining Co.* v. *Shinn*, 93 Ark. 346, 124 S. W. 1045.

Without unduly extending this discussion, let it be said that we are not pioneering in making these announcements. We are following the modern trend as being one by which absolute justice may be had without doing violence to any substantial right.

Ample authority may be found in a comparatively new statement of the law of contracts under Chapter 6, "Contractual Rights of Persons not Parties to the Contract." Sections 133-136, Restatement of Law of Contracts.

Appellant challenges finally the correctness of interest charged upon this indebtedness, but suggests no real reason why the appellant should not pay interest other than he should not pay the obligation at all. Since the payment of interest is an incident to the payment of the principal debt, we know of no real or valid reason that would protect the appellant in this respect in that incidental charge for the unnecessary delay in the payment of the contractual obligation.

No real benefit may come of, a more extended discussion.

The judgment is affirmed.