LITTLE ROCK WASTEWATER UTILITY
*v.* LARRY MOYER TRUCKING, INC.

94-1455 902 S.W.2d 760

Supreme Court of Arkansas
Opinion delivered July 10, 1995
[Rehearing denied September 11, 1995.*]

---

*Roaf, J., not participating.

*Don F. Hamilton*, for appellant.

*Richard C. Downing*, for appellee.

ROBERT H. DUDLEY, Justice. The Arkansas State Highway Commission decided that Baseline Road in Pulaski County should be widened from two lanes to five lanes, and it knew that appellant, Little Rock Wastewater Utility, owned sewer lines that were located where the construction would take place. In anticipation of the earthwork and construction involved in widening the road, the Commission, acting through the Arkansas Highway and Transportation Department, entered into a contract with the Little Rock Wastewater Utility to relocate Utility's sewer lines. In this agreement, dated August 12, 1988, and styled "The Relocation Agreement," Utility was to relocate its facilities when notified to do so by the Department. Upon notice, it was to act with diligence, begin the relocation work within thirty days, complete the work within 150 days thereafter "in a manner as will result in no avoidable interference or delay in the construction work," and adjust the sewer facilities as required by the construction work. After the contract was executed, Utility was given notice and started its work. By the spring of 1991, Utility had completed most of its relocation work. On March 5, 1991, the Department entered into a separate contract with Southern Pavers, Inc. to widen the roadway and surface the road. That same day, Southern Pavers, the prime contractor, entered into a subcontract with Larry Moyer Trucking, Inc. to clear and grub for widening the road and to install drainage and related facilities. The subcontractor, appellee Moyer Trucking, started its work.

In the performance of its subcontract with Southern Pavers, Moyer Trucking experienced delays. It contends the delays were caused by Utility's failure to perform its contract with the Department and that it suffered damages as a result of these delays. Moyer Trucking filed this suit in which it alleged it was a third-party beneficiary of the Relocation Agreement and it suffered damages as a result of Utility's failure to perform that agreement satisfactorily. Upon trial, a jury returned a $62,563.49 verdict in Moyer Trucking's favor. Utility appeals, and Moyer Trucking cross-appeals. We affirm on direct appeal and reverse and remand on cross-appeal.

■■ Utility's first point on direct appeal is that there is no legal basis for Moyer Trucking's claim that it was a third-party beneficiary of the relocation contract between the Department and Utility. The presumption is that parties contract only for them-

selves, and a contract will not be construed as having been made for the benefit of third parties unless it clearly appears that such was the intention of the parties. *Howell* v. *Worth James Constr. Co.*, 259 Ark. 627, 535 S.W.2d 826 (1976). However, a contract is actionable by a third party where there is substantial evidence of a clear intention to benefit that third party. *Id.* at 629, 535 S.W.2d at 828. It is not necessary that the person be named in the contract, and if he is otherwise sufficiently described or designated, he may be one of a class of persons if the class is sufficiently described or designated. *Id.* at 630, 535 S.W.2d at 829.

Both Utility and Moyer Trucking agree that *Howell* is the leading case on third-party beneficiary contracts in this State, but each contends the case supports its argument in this appeal. In *Howell*, the appellee contractor, Worth James Construction Co., constructed water lines for the appellant subdivision, Tall Timber Development Corp. *Id.* at 638, 535 S.W.2d at 827. Appellant subdivision contracted separately with co-appellant, Howell, for co-appellant to do trenching. *Id.* Howell damaged the water lines during trenching, and the appellee utility contractor, Worth James, sued for damages based upon a provision in the contract between the subdivision and the trenching contractor. *Id.*, 535 S.W.2d at 827-28. The appellant subdivision argued that the contract sued upon was for the benefit of the subdivision and the trenching contractor only. *Id.* at 629, 535 S.W.2d at 828. We held that a provision in the contract by which the subdivision retained forty percent of the contract price as a bond for the trenching contractor evidenced its intent to be a surety for it and that the utility contractor was an intended beneficiary. *Id.* at 630, 535 S.W.2d at 829.

In the case at bar, Utility argues that, since there was no retainage provision in the relocation contract, this case does not come within the ambit of *Howell*. The argument is not persuasive. It is not necessary that there be a retainage provision in order for there to be third-party beneficiary of a contract. Other factors may demonstrate that a third party was in the class of persons intended to be a beneficiary of the contract.

Here, the language of the Relocation Agreement shows that the relocation work to be performed by Utility was to be practically completed before the earthwork and surfacing contract

would be let by the Department. In the pertinent parts, the Relocation Agreement states:

> [A]s part of the necessary work of such improvements [Utility] must relocate certain of its existing utility facilities and/or secure "Department's" approval of the construction and location of certain proposed facilities on the right of way of said highway project. . . .

> * * *

> The proposed highway improvement necessitates the adjustment, relocation, and/or "Department's" approval of the proposed locations of certain facilities of [Utility] as described in the following description of work and such adjustment, relocation, or construction being shown in detail in [Utility's] plans, sketches, estimate of costs, and specifications (when applicable) which are attached hereto and made a part hereof . . . .

> * * *

> [Utility] shall not begin the adjustment work until authorized by "Department" and shall exercise due diligence to begin work within 30 calendar days and to complete such work within 150 calendar days thereafter *and in a manner as will result in no avoidable interference or delay to the "Department's" construction work or in the adjustment of [Utility's] facilities.*

(Emphasis added.)

Larry Moyer, the president of appellee Moyer Trucking, testified that, when making Moyer Trucking's bid for the sub-contract, he relied on the fact that Utility essentially had completed its work and would coordinate the remaining work with the Department while construction on the roadway was in progress. Randy McNulty, president of Southern Pavers, testified that he relied on this fact when he made the primary bid and that he bid less because the relocation of the utilities would be almost complete, there would be less interference, and it would cost less to complete the construction job. Billy Morgan, superintendent for Southern Pavers, testified that he understood that the utility moving had been done before the job was started, but, as it turned out,

the moving had not been done, and the work done by Moyer Trucking was significantly impaired.

In determining whether Moyer Trucking was in the class to be benefitted by the contract, the reasoning underlying cases from other jurisdictions is helpful. In *Moore Constr. Co.* v. *Clarksville Dep't of Elec.*, 707 S.W.2d 1 (Tenn. App. 1985), the Tennessee Court of Appeals considered the question of whether a contractor can be an intended beneficiary of a construction contract between an owner and another prime contractor for work being performed as part of the same construction project. *Id.* at 10. It held that unless the construction contracts involved clearly provide otherwise, prime contractors on construction projects involving multiple prime contractors will be considered to be intended or third-party beneficiaries of the contracts between the project's owner and other prime contractors. *Id.* The Tennessee court relied in part on a New Jersey case, *Broadway Maintenance Corp.* v. *Rutgers*, 447 A.2d 906 (N.J. 1982), in which the New Jersey Supreme Court said that when parties conceived that the prime contractors would benefit from the performance of their fellow contractors, when the project could not have been finished without each contractor meeting its respective obligations, and when the obligations of others induced each contractor to undertake its job at the agreed price, the contractors could recover from each other as third-party beneficiaries of the contracts between them and the owner. *Rutgers*, 447 A.2d at 910.

Here, Utility agreed to move the sewer lines so they would not interfere with the construction work that the Department was to later undertake. Then the Department contracted with Southern Pavers, which in turn subcontracted with Moyer Trucking to do the construction work. Thus, the trial court correctly refused to grant a directed verdict in favor of Utility and correctly allowed the third-party beneficiary issue to be submitted to the jury.

Under this same point of appeal Utility argues that Moyer Trucking was not an intended beneficiary of the Relocation Agreement because third-party beneficiary status was limited to the prime contractor, Southern Pavers. The trial court correctly held that the party that did the actual work was intended to be one of the parties to benefit from the Relocation Agreement. The reasoning in our case of *Freer* v. *J.G. Putman Funeral*

*Home, Inc.*, 195 Ark. 307, 111 S.W.2d 463 (1937) is applicable. In that case, appellant contracted to pay the funeral expense of the deceased, but argued, in part, that he was not obligated to pay a funeral home with which he had not contracted. *Id.* at 311, 111 S.W.2d at 465. We upheld the appellant's obligation to pay the funeral home, indicating that, because Freer had agreed to pay for the services, it did not matter who performed the services. We said, "[T]here was no condition under which it could be of more expense or more burdensome than if [Freer] had made the selection himself, independent of others who were more interested in that regard." *Id.* Similarly, it does not matter that a subcontractor to the general contractor did the actual work that was contemplated by the contract.

In its second point on direct appeal, Utility argues that Moyer Trucking is barred from recovering as a third-party beneficiary by a "no damage" provision in the specifications that apply to the construction contract between Southern Pavers and the Department. The material part of the provision is as follows:

> In general, the contract will indicate various utility items, certain of which are to be relocated or adjusted by the utility owner and others which are to be relocated or adjusted by the Contractor. The Department will notify all known utility companies, all known pipe line owners, or other known parties affected, and endeavor to have all necessary adjustments of the public or private utility fixtures, pipe lines, and other appurtenances within or adjacent to the limits of construction made as soon as practicable.

> Water lines, gas lines, wire lines, service connections, water and gas meter boxes, water and gas valve boxes, standards, cableways, signals, and all other light utility appurtenances within the limits of the proposed construction which are to be relocated or adjusted are to be moved by the owners, except as otherwise provided for in the Special Provisions or as noted on the plans.

> The Contractor shall consider in the bid of the permanent and temporary utility facilities and appurtenances in their present, relocated, or proposed positions. *No additional monetary compensation will be allowed for any delays, inconveniences, or damages sustained due to any*

> *interference from the utilities or appurtenances or from the operations of relocating them.*

(Emphasis added.)

██ Courts give only a restrained approval to "no damage" clauses because of their harsh effect. While such clauses are not void as against public policy and will be enforced so long as the basic requirements for a valid contract are met, the courts accord such clauses a strict construction. Maurice T. Brunner, Annotation, *Validity and Construction of "No Damage" Clause With Respect to Delay in Building or Construction Contract*, 74 A.L.R.3d 187, 212 (1976). In so construing the clause in this case, we construe it to mean that the Department was not required to pay any additional monetary compensation to the contractor for delays or damages that resulted from interference by Utility. This result is mandated by two factors. First, the provision is only contained in the construction contract between the Department and Southern Pavers. It is not contained in Utility's contract. Obviously, then, the Department included the provision in its contract with Southern Pavers to prevent it from being liable for extra compensation to Southern Pavers. Second, a fair reading of the entire provision shows that it was intended for the benefit of the Department only.

██ Utility's third point on direct appeal is that there was no substantial evidence to support the jury's award of damages in the amount of $62,563.49. We view the evidence in the light most favorable to the appellee, *Page* v. *Boyd-Bilt, Inc.*, 246 Ark. 352, 438 S.W.2d 307 (1966), and affirm if that evidence is substantial. The evidence in this case was substantial. Larry Moyer, president of Moyer Trucking, testified that he kept a diary of delays on the job. His diary reflects seventeen incidents from March 21, 1991, to September 24, 1991, in which sewer lines or water lines were broken or hit, and the time lost from each incident ranged from three hours to two days. He provided an invoice and testified about the hourly rate for the extra work and expense caused by the delays. The total of the invoice was $62,563.49, which was the amount awarded by the jury. Moyer explained the charges for each delay. Billy Morgan, superintendent for Southern Pavers, testified that he personally observed the traffic congestion and the interruption. In addition, the diary of James Sale,

a foreman for Moyer Trucking, showed the delays and the causes.

In its final argument Utility contends that the trial court erred in charging the jury about the measure of damages because (1) there was no competent evidence to support giving the instruction and (2) the instruction incorrectly stated the elements of damage. We have already reviewed the evidence, and there is no need to repeat it in addressing this point of appeal. In addition to questioning the sufficiency of that evidence, Utility argues that the damages were speculative.

When a party seeks to recover anticipated profits under a contract, he must present a reasonably complete set of figures to the jury and should not leave the jury to speculate as to whether there could have been any profits. *American Fidelity Fire Ins. Co.* v. *Kennedy Bros. Constr. Co., Inc.*, 282 Ark. 545, 670 S.W.2d 798 (1984). Lost profits must be proven by evidence showing that it was reasonably certain the profits would have been made had the other party carried out its contract. *Id.* at 546, 670 S.W.2d at 799; *Reed* v. *Williams*, 247 Ark. 314, 775 S.W.2d 90 (1969). Such proof is speculative when based upon such factors as projected sales when there are too many variables to make an accurate projection. *See Sumlin* v. *Woodson*, 211 Ark. 214, 199 S.W.2d 936 (1947). In *Kennedy Bros. Constr. Co.*, we upheld an award of profits when the appellee lost a bid from the U.S. Army Corps of Engineers because of a faulty surety bond. *Kennedy Bros. Const. Co.*, 282 Ark. at 546, 670 S.W.2d at 799. The figures presented to the jury were based upon the cost of the job if it had been completed within the contract time. The work was not done because the bid was lost; therefore, expert testimony was used to estimate the figures, and we held the damages were reasonably accurate. *Id.* at 547, 670 S.W.2d at 800. The loss of profit in the case at bar was based upon work already completed, and this figure was accurate enough to be submitted to a jury.

In Utility's last part of this argument, it argues, without any citation of authority and actually without any real argument, that the instruction incorrectly stated the elements of damage. We have often said that assignments of error unsupported by convincing argument or authority will not be considered on appeal, unless it is apparent without further research that they are well taken. *Mikel* v. *Hubbard*, 317 Ark. 125, 876 S.W.2d 558 (1994).

On cross-appeal Moyer Trucking contends that the trial court erred in refusing to award it an attorney's fee. The trial court denied Moyer Trucking's request for an attorney's fee but gave no reason. Moyer Trucking filed a post-trial motion for reconsideration of an attorney's fee. The trial court did not rule on the motion, and it was deemed denied after thirty days.

 Section 16-22-308 of the Arkansas Code Annotated allows the award of attorney's fees for a breach of contract, but the decision whether to award such a fee is discretionary with the court. *Chrisco* v. *Sun Indus.*, 304 Ark. 227, 800 S.W.2d 717 (1990). The trial court's decision will not be set aside absent abuse of discretion. *Id.* at 230, 800 S.W.2d at 719. However, a clearly erroneous interpretation or application of a law or rule will constitute a manifest abuse of discretion. *See Crowder* v. *Flippo*, 263 Ark. 433, 565 S.W.2d 138 (1978). When applying Rule 11 of the Arkansas Rules of Civil Procedure, another provision for attorney's fees, we have remanded for reconsideration when the trial court's order gives no explanation that can be founded in the proper application of the law. *Whetstone* v. *Chadduck*, 316 Ark. 330, 871 S.W.2d 583 (1994). Here, the court did not give an explanation, and we do not know whether the ruling was erroneously founded in law.

 A party may recover for damages from breach of contract when that party is a third-party beneficiary of the contract. *Howell*, 259 Ark. at 629, 535 S.W.2d at 828. It follows that a third-party beneficiary may recover attorney's fees under the statute that allows such fees for breach of contract. Since we do not know the reason the trial court declined to award attorney's fees, we remand for the trial court to consider whether to make such an award.

Affirmed on direct appeal; reversed and remanded on cross-appeal.

ROAF, J., not participating.