Mr. Charles L. Robinson, CPA, CFE Legislative Auditor 172 State Capitol Little Rock, AR 72201-1099
Dear Mr. Robinson:
You have asked for my opinion on the following questions:
 1. Are volunteer firemen employees of a city if the city has an officially organized volunteer fire department?
 2. Are donations or other moneys deposited in a bank account with the city's tax ID number presumed to be public funds or moneys?
 3. What factors need to be considered in determining whether moneys or donations collected to benefit a public entity are public or private?
 4. If funds collected to benefit a public entity are considered private and are deposited in a private bank account or safe deposit box, are there any statutory, ethical, or common law duties of accountability, and to whom?
 5. During the course of an audit or investigation, does the Division of Legislative Audit have the authority to examine the private records or bank accounts of officials, employees, business, or individuals doing business with the public entity under examination, or are these individuals "immune" from examination by the Division of Legislative Audit?
 6. May a public official, public employee, or volunteer fireman collect money for the benefit of a public entity from private sources, maintain such funds in a private bank account, and have no duty to account for these funds?
 7. Is there a distinction between a statutory definition of" public funds" and the term "public moneys"? Is there a distinction between the standard of care in accounting for such funds?
You indicate in your request that you have posed these questions in order to clarify certain issues addressed in the attached Ark. Op. Att'y Gen. No. 2000-063.
In my previous opinion, I reported that the Assistant Chief of the Kensett Volunteer Fire Department (the "Department") had described that entity as a "municipal volunteer department," funded in part through city appropriations and in part through "personal citizen donations" and "fund raisers" organized by the "Kensett Volunteer Fire Department Association" (the "Association"). In your latest request, you note that, to your knowledge, the Association "is not a separate legal entity." You further note that the funds solicited by the Association were originally placed in a bank account and CD using the City of Kensett's federal income tax identification number, but that funds from the CD have been transferred to a safety deposit box in the Association's name.
RESPONSE
The answer to your first question will depend on the extent to which the city actually controls the activities and operation of the volunteer fire department. This entails a factual inquiry I am neither equipped nor authorized to undertake. However, I will discuss the factors to be considered in making a determination. The answer to your second question is "no." With respect to your third question, various factors bear on whether donations made to benefit a public entity are public or private. Primary among these is whether the collections were made by public employees subject to the direction and control of the public entity. With respect to your fourth question, charitable solicitors are required to account to this office if collections exceed $25,000 per year, and private, nonprofit corporations are required to account to the IRS. I am unaware of any other accounting requirements for collections made to benefit a public entity. With respect to your fifth question, in my opinion the Legislative Auditor has the authority to audit the bank account of a private individual or entity only if the private party is "doing business" with a public entity, and only then regarding such business, or to clarify matters that relate to the audit of a public entity. With respect to your sixth question, public officials and employees are statutorily obligated to submit to an accounting of funds collected on behalf of a public entity. A volunteer fireman will be likewise obligated to the extent he either qualifies as a public employee or meets the conditions discussed in response to your fifth question. The answer to your seventh question is "no."
Question 1: Are volunteer firemen employees of a city if the city has anofficially organized volunteer fire department?
As reflected in A.C.A. § 20-22-802, a fire department can take any of various forms:
 "Fire department" means any organization established for the prevention or extinguishment of fires including, but not limited to, fire departments organized under improvement districts, private fire departments, and volunteer fire departments. . . .
This definition includes a variety of potential organizational structures that reflect variable degrees of municipal control. For instance, a volunteer fire department that is organized as a private, nonprofit corporation, planning and funding its own operations, even if its existence and activities are acknowledged by municipal ordinance, would not appear to qualify as manned by "employees" of the municipality.
As a general proposition, determining whether an employer/employee relationship exists between a city and a volunteer firefighter will entail an inquiry into the facts of the particular relationship — a task this office is neither authorized nor equipped to undertake. However, in Ark. Op. Att'y Gen. No. 93-324, this office set forth the types of factual questions that will bear on this determination:
 In determining whether an "employment" relationship exists, the Arkansas Supreme Court has stated the following:" In determining employment, we look to various factors with the degree of control being the most universally accepted standard for establishing an employer-employee relationship." Cash v. Carter, 312 Ark. 41, 44, 847 S.W.2d 18 (1993). See also Haavistola v. Community Fire Co. of Rising Sun, Inc., 1993 WL 388330 (4th Cir. 1993) (stating that the common law standard traditionally used in deciding whether an individual can claim employee status emphasizes the importance of an employer's control over the individual.); Craddock Moving Storage Co. v. Settles, 427 S.E.2d 428 (Va.Ct.App. 1993) (stating one is an "employee" of another if the person for whom he or she works has the power to direct the means and methods by which the work is done.) It has also been stated that "[e]mployment is commonly used and understood to refer to one's work." Kaczmarek v. Provident Life and Accident Ins. Co., 747 F. Supp. 516, 517 (E.D.Ark. 1990). See also Webster's New World Dictionary 1638 (2d ed. 1974) (defining "work" as "physical or mental effort exerted to do or make something; purposeful activity.") Thus, it appears that if individuals are not paid wages for their work, it does not necessarily mean that they are not considered to be "employed." Rather, the test for determining whether an employment relationship exists will be whether the employer has effective control over an individual's work.
In Office of Emergency Services v. Home Insurance Co., 2 Ark. App. 1885, 190, 618 S.W.2d 573 (1981), the Arkansas Court of Appeals recited certain additional factors adopted by the Supreme Court:
 In Southern Farm Bureau Cas. Co. v. Tuggle, 270 Ark. 106, 603 S.W.2d 452 (Ark.App. 1980), this Court outlined several factors to be considered in determining whether an employer-employee relationship exists:
(1) the right to terminate employment before the job is finished;
(2) the amount of compensation being calculated on a time basis;
(3) which party furnished materials and equipment;
 (4) and the employer's ability to exercise some degree of control of the manner of doing the work.
As noted above, applying these tests to variously organized volunteer fire departments would very likely lead to differing conclusions regarding the nature of the relationship between a fire department and the municipality.[1] For instance, a fire department organized and funded as an improvement district subject to its own direction and control is hardly likely to be deemed to be in an employer/employee relationship with a city or county. By contrast, a volunteer fire department created by ordinance and possibly headed by a city-paid fire chief who directs operations and recommends appropriations for city-financed equipment is far more likely to be deemed staffed by city employees.
My inquiries have revealed that Kensett's "officially organized volunteer fire department" was established in 1964 by Ordinance No. 114 (the "Ordinance"). Under the terms of the Ordinance, an apparently unpaid fire chief is "charged with the responsibility and accountability to the City for all equipment and have control and management of the organization." The Department is further charged with adopting its own rules, subject to city council approval. The Ordinance dictates a minimum of 12 firemen serve at all times and requires bi-monthly meetings "for the purpose of instructing and training." The Ordinance suggests that the city will own all equipment, and it vests a significant amount of supervisory control in the city council — factors that would support concluding that Kensett and its firemen are in an employer/employee relationship. On the other hand, the fire chief's independence in planning and management might support a contrary conclusion. Although I suspect that a finder of fact would classify volunteer firemen as city employees under this arrangement, this determination would ultimately turn on a factual inquiry I cannot and will not undertake.
Moreover, as I suggested in my previous opinion, the particular issue giving rise to your request is complicated by the fact that a separate organization, the Association, exists for the purpose of collecting private funds to be used for the same fire fighting purposes as the funds appropriated and allocated by the City of Kensett. I appreciate that you question whether the Association even exists as a separate entity, since, among other things, it is apparently not incorporated, its initial deposit of revenues was made using the Department's tax ID number and its activities are conducted by members of the Department. With respect to the first of these factors, I should point out that an association cannot be characterized as a legal nullity merely because it is not incorporated. Rule 23.2 of the Arkansas Rules of Civil Procedure, which incorporates elements of Ark. R. Civ. P. 23, expressly acknowledges the legal significance of the association form by allowing unincorporated associations to sue or be sued using the class-action device.[2] The question of whether the fund-raising members of the Association are in fact municipal employees acting in their official capacities is one of fact that this office cannot answer.
I have recited above the general sorts of questions the courts have traditionally asked in making this type of determination. In your request, you have further itemized the following questions that you deem to be relevant to this determination:
• Who is soliciting the funds? Public or private employees?
 • When are the funds being solicited? During normal work hours or after hours?
 • At what location is the money being solicited? Are donations being taken at buildings owned by the political subdivision?
 • Are public facilities, vehicles, or assets being used in soliciting or collecting the funds? Are public employees utilizing public vehicles, buildings, equipment or other assets in the solicitation of the funds?
 • Is there a separate legal entity soliciting the funds, and does it have a separate tax ID number?
 • In what name are the funds being solicited? Are the funds being solicited in the name of a public entity, or the name of an association, foundation, etc.?
• Are receipts being issued, and if so, in what name?
 • Who has control of the funds? A separate board, one public official, etc.?
• How are disbursements made?
• Are records being kept and by whom?
• Where is the money being deposited?
• What type of accounting is required and to whom?
I fully agree that each of these questions is pertinent in determining the Association's status under the legal standard set forth above. However, as I have noted, only a finder of fact can provide the answers to these relevant questions.
Question 2: Are donations or other moneys deposited in a bank accountwith the city's tax ID number presumed to be public funds or moneys?
I have found no authority in Arkansas or any other jurisdiction for the proposition that depositing funds into an account using the city's tax ID number creates a presumption that the funds are public. In my opinion, this fact is merely one item of evidence, albeit a significant one, that a court might consider in determining whether the transactions at issue are public or private.
Your question raises what a layman might deem a relatively subtle issue regarding who needs to prove what in a lawsuit. As a general proposition, the plaintiff in a lawsuit bears the burden of going forward with evidence to prove his case. Potlatch Corp. v. Missouri Pac. R.R.Co., 321 Ark. 314, 323 (1995); Morton v. American Medical International,Inc., 286 Ark. 88, 89, 689 S.W.2d 535 (1985). Consequently, if you were to file suit to seek an accounting of the Association's funds, as plaintiff you would need to establish by a preponderance of the evidence your entitlement to do so. However, in certain cases a plaintiff can introduce evidence of a sort that raises a presumption of his claim's validity, shifting to the defendant the burden of going forward with countervailing evidence and possibly raising the quantum of evidence the defendant would need to offer in order to prevail. For example, in a case where a plaintiff contests a will, he can shift to a named beneficiary the burden of establishing the will's validity by persuading the court that the beneficiary procured the will:
 In the case of a beneficiary of a will who procures the making of the will, a rebuttable presumption of undue influence arises, which places on the beneficiary the burden of going forward with evidence that would permit a rational fact-finder to conclude, beyond a reasonable doubt, that the will was not the product of insufficient mental capacity or undue influence. Looney v. Estate of Wade, 310 Ark. 708, 839 S.W.2d 531
(1992); Edwards v. Vaught, 284 Ark. 262, 681 S.W.2d 322 (1984); Rose v. Dunn, 284 Ark. 42, 679 S.W.2d 180 (1984).
Hodges v. Cannon, 68 Ark. App. 170, 177, 5 S.W.3d 89 (1999). Notwithstanding what might be its evidentiary force, proof that a deposit was made using the city's taxpayer ID number raises no such burden-shifting presumption.
Question 3: What factors need to be considered in determining whethermoneys or donations collected to benefit a public entity are public orprivate?
This question is essentially indistinguishable from the question whether the Association's members were acting as public employees in undertaking their activities. Consequently, in my opinion the factors discussed in my response to your first question would control in determining whether the amounts collected are public or private.
Question 4: If funds collected to benefit a public entity are consideredprivate and are deposited in a private bank account or safe deposit box,are there any statutory, ethical, or common law duties ofaccountability, and to whom?
The answer to this question in any particular instance would depend on the extent of the collecting entity's activities, the nature of the entity and the relationships among the parties. As I noted in my previous opinion, if the Association collects more than $25,000 per year, it is required to register with my office as a charitable solicitor and to report regarding its financial activities. See generally, A.C.A. §4-28-401 to -416 (Supp. 1999). Moreover, if the collecting entity is organized as a private, nonprofit corporation under 26 U.S.C. § 501(c)(3) (which the Association apparently is not), IRS reporting requirements will apply. 26 U.S.C. § 6033(a)(1); Dedication and Everlasting Love toAnimals v. The Humane Society of the United States, Inc., 50 F.3d 710,711-12 (3d Cir. 1995) ("An IRS Form 990 [an Exempt Organization Business Income Tax Return] is the equivalent of a tax return filed by a nonprofit organization."). Furthermore, if the collecting entity has contracted to collect funds on the city's behalf, the contract might require periodic accountings. Conversely, if a "donor" stands to benefit from his contribution by receiving enhanced fire protection, the "donation" might be characterized as performance under an oral contract with the collector, whose contractual obligations might include accounting for and paying the funds to the city as a third-party beneficiary.[3] This latter analysis would be bolstered if the contribution were considered non-deductible by the IRS, which you indicate is the case when the collector is an unincorporated association. Finally, any inappropriate disposition of contributions would obviously be subject to the common law of fraud and the Deceptive Trade Practices Act, A.C.A. § 4-88-101 etseq., although this body of law contains no requirement of accounting to any designated entity.
Question 5: During the course of an audit or investigation, does theDivision of Legislative Audit have the authority to examine the privaterecords or bank accounts of officials, employees, business, orindividuals doing business with the public entity under examination, orare these individuals "immune" from examination by the Division ofLegislative Audit?
The answer to this question is contained in the statutes recited in my previous opinion and in your request. Subsection 10-4-202(a)(1) of the Code provides:
 The Legislative Auditor has the power and duty, acting through his duly authorized employees, to conduct audits of the records and accounts of all officials or employees of counties, municipalities, school districts, county school boards, and educational cooperatives.
Section 10-4-204 of the Code provides:
 In verifying any transaction or in determining the nature or manner of handling any matter under investigation during the course of any audit, the Director of the Division of Local Affairs and Audits of the Division of Legislative Audit shall have the right to examine the accounts of any officer or employee of any county, school district, or municipality or the records of any banking institution or business concern and to require, of the proper officer of any banking institution or business concern, verified statements with relation to any such transactions or matters.
Finally, A.C.A. § 10-4-112(b) provides:
 [T]he Legislative Auditor shall have the right to audit the bank account of any officer or employee of any state office, department, institution, bureau, board, commission, or other state agency, or the bank account of any other person or firm doing business with the state if the Legislative Auditor has reason to believe that the auditing of the accounts is necessary for the verifying of any audits made under the authority of this act.
These statutes establish that the Legislative Auditor has the authority to audit the bank account of a private individual or entity only (1) to verify a transaction involving a public entity or (2) to determine "the nature or manner of handling any matter under investigation." Despite the vagueness of the latter provision, it appears that the Legislative Auditor's power to audit a private entity is limited to situations where the private party is either "doing business" with a public entity or engaged in some activity that relates to the audit of a public entity. Consequently, if the Association were deemed a private entity (1) whose funds are beyond the Department's control and (2) whose activities are not of the sort that, if disclosed, might expedite an audit of the Department, the Association would indeed be "immune from a legislative audit," as I suggested in my previous opinion. However, as I further indicated, I lack both the information and the authority to determine whether this purely factual predicate applies.
Question 6: May a public official, public employee, or volunteer firemancollect money for the benefit of a public entity from private sources,maintain such funds in a private bank account, and have no duty toaccount for these funds?
In my opinion, if a public official or public employee collects money for the benefit of a public entity from private sources, it will be bound to account for those funds to the Legislative Auditor pursuant to A.C.A. § 10-4-202(a)(1). A volunteer fireman will be obliged to account for collections to the extent he either qualifies as a "public employee" under the above described standard or meets the conditions for auditing a private person or entity discussed in my response to your fifth question.
Question 7: Is there a distinction between a statutory definition of"public funds" and the term "public moneys"? Is there a distinctionbetween the standard of care in accounting for such funds?
Your question is confusing in that you fail to identify what "statutory definition of `public funds'" you mean.[4] However, I am unaware of any instance in which either statutory or case law has drawn any distinction between "public funds" and "public moneys." On the contrary, consistent with the ordinary-language sense of these terms, they are regularly used interchangeably. This typical practice is illustrated in the following from Unborn Child Amendment Committee v. Ward, 328 Ark. 454, 462-63,943 S.W.2d 591 (1997):
 The Committee agrees with the trial court's finding that "[t]he term `public funds' as used in Amendment 68, Section 1 of the Constitution does not refer to tax revenues, but rather to any public monies belonging to the State." Such a construction of "public funds" is consistent with our prior cases. See Sebastian County Chapter v. Weatherford, 311 Ark. 656, 846 S.W.2d 641 (1993) (giving term "public funds" as used in FOIA its plain and ordinary meaning — "moneys belonging to government.").
In Sebastian, the Court unequivocally declared the identity of meaning in these two terms:
 The issue in this appeal has been narrowly drawn by the parties and the circuit court, that is, what constitutes support by public funds? We focus first on the term "public funds," which is not defined in the FOIA. The definition given in Black's Law Dictionary, 6th ed. (1990), is" Moneys belonging to government, or any department of it, in hands of public official." Case law cited by Black's in support of this definition is relevant to the present case. See Droste v. Kerner, 217 N.E.2d 73 (Ill. 1966). In Droste, a taxpayer attacked the Illinois legislature's conveyance of land submerged beneath Lake Michigan to U.S. Steel on the basis of a statute that prohibited the "disbursement" of "public funds" and "public moneys" by state officials. The Illinois Supreme Court affirmed the trial court and rejected the taxpayer's attempt to translate 194.6 acres of land into "public funds."
311 Ark. at 659. See also, McArthur v. Smallwood, 225 Ark. 328, 333,281 S.W.2d 428 (1955); Ross, Disbursing Agent v. Rich, 210 Ark. 74, 76,194 S.W.2d 297 (1946); State Use Crawfordsville Special School District v.Huxtable, 191 Ark. 10, 18, 12 S.W.2d 1 (1935); Ark. Ops. Att'y Gen.96-102 and 86-042 (all using the terms interchangeably). Given this identity of meanings, the same accounting standard of care would apply regardless of how the funds are designated.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
Enclosure
[1] I should note that regardless how a fire department is organized, the state offers certain incentives for it to meet the standards for state certification. A.C.A. § 20-22-801 et seq. Subsection 20-22-802(4) of the Code defines a "certified fire department" as being "any fire department certified by the Director of the Office of Fire Protection Services as meeting minimum standards prescribed by the Arkansas Fire Protection Services Board." Section 20-22-801 of the Code provides that in order to encourage volunteer fire protection, (a) rural volunteer firefighters shall be afforded workers' compensation coverage and (b) the civil liability of all certified departments and fire fighters shall be limited. Section 14-26-101 of the Code extends workers' compensation coverage to county volunteer firefighters and A.C.A. § 14-60-101 extends the same coverage to city volunteer firefighters.
[2] Reporter's Note 2 to Rule 23.2 points out the long pedigree of class actions involving unincorporated associations:
 Actions by and against members of unincorporated associations as a class have been long recognized in Arkansas. Since an association cannot sue or be sued in its own name, a class action has been the customary method of bringing suit. Baskin v. United Mine Workers of America, 150 Ark. 398, 284 S.W. 464 (1921); Smith v. Arkansas Motor Freight Lines, 214 Ark. 553, 217 S.W.2d 249 (1949).
[3] The qualifications for and rights of a third-party beneficiary of a contract were most recently stated in Cherry v. Tanda, Inc.,327 Ark. 600, 609-10, 940 S.W.2d 457 (1997):
 Under Arkansas law, there is a presumption that parties contract only for themselves, and a contract will not be construed as having been made for the benefit of third parties unless it clearly appears that such was the intention of the parties. Little Rock Wastewater Util. v. Larry Moyer Trucking, 321 Ark. 303, 902 S.W.2d 760 (1995). However, a contract is actionable by a third party when there is substantial evidence of a clear intention to benefit that third party. Id. It is not necessary that the person be named in the contract if he is a member of a class of persons sufficiently described or designated in the contract. Id.
[4] The term "public funds" is regularly used without definition in the Code. "Public funds" is variably defined at A.C.A. §§ 6-85-105, 19-8-101,19-8-202 and 19-11-203(20). The least specialized of these definitions appears at A.C.A. § 19-8-101, under the general provisions of the chapter captioned "Depositories for Public Funds": "As used in §§ 19-8-101 —19-8-107, unless the context otherwise requires, `public funds' or `funds' means any and all kinds of funds handled by treasurers, collectors, commissioners, sheriffs, and clerks." Possibly more expansive is the definition set forth at A.C.A. § 19-8-202, contained in the subchapter captioned "Securities for Deposits":
 As used in this subchapter, "public funds" means, but shall not be limited to, funds of:
 (1) The State of Arkansas, or any agency, department, board, commission, or instrumentality thereof;
 (2) Any political subdivision of the State of Arkansas, or any agency thereof,
(3) Any school board or school district;
(4) Any improvement or other taxing or assessing district; and
 (5) Any public corporation or authority created by or recognized by the State of Arkansas, or any political subdivision thereof.
Apparently more narrow is the definition set forth at A.C.A. §19-11-203(20), contained within the Arkansas Purchasing Law:
 "Public funds" means all state-appropriated and cash funds of state agencies, as defined by applicable law or official ruling. Public funds for purposes of this subchapter shall not include funds administered by, or under the control of, agencies, except public funds. Without necessarily being limited thereto, it does not include grants, donations, research contracts, and revenues derived from self-supporting enterprises which are not operated as a primary function of the agency, no part of which funds are deposited in the State Treasury.
The term is not defined in the Fire Prevention Act, A.C.A. § 12-13-101 etseq., which simply defines "members of fire departments" as including "the personnel of all departments supported wholly or partially by public funds."